**SEGUROS COMERCIAL AMERICAS S.A. De C.V., Plaintiff,**

v.

**AMERICAN PRESIDENT LINES, LTD., Defendant.**

**Civil Action No. H–94–2938.**

United States District Court,
S.D. Texas,
Houston Division.

March 7, 1996.

Dana Keith Martin, Hill Rivkins Loesberg O'Brien & Mulroy, Houston, TX, for plaintiff.

Charles Scott Kinzel, Royston Rayzor Vickery & Williams, Houston, TX, for defendant.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

Defendant, American President Lines, Ltd. ("APL") moves to dismiss Plaintiff, Seguros Comercial Americas S.A. de C.V.'s ("Seguros") complaint based on *forum non conveniens* grounds, arguing that Mexico is an available and adequate forum in which to litigate this case. Seguros adamantly opposes dismissal. On motion to Judge Kenneth Hoyt, this case was consolidated with Civil Action No. 94–3122.

Thereafter, Plaintiff submitted a Supplemental Response to APL's Motion to Dismiss ("Supplemental Response") and APL then filed its Supplemental Reply to Plaintiff's Supplemental Response to Defendant's Motion to Dismiss ("Supplemental Reply"). Meanwhile, Judge Sim Lake ruled in a case virtually identical to the one at bar, *Seguros Comercial Americas S.A. de C.V. v. American President Lines, Ltd.,* 910 F.Supp. 1235 (S.D.Tex.1995) ("Seguros I"), that Defendant's Motion to Dismiss was meritorious. Judge Lake therefore dismissed the action before him.[1]

---

1. The facts in the case before Judge Lake were very similar to those at bar: a shipment of Reebok tennis shoes from Jakarta, Indonesia to Leon, Mexico was shipped by Reebok International, Ltd., to a consignee, RBK International (Mexico), S.A. de C.V., and was insured by Plaintiff, Seguros, as subrogee for RBK. The route selected was for all intents and purposes the same as the routes involved in the cases at bar. In sum, goods were shipped by vessel to Long Beach, California; then by rail to San Antonio, Texas; then by truck to Laredo, Texas; then by truck to Nuevo Laredo, Mexico; and then by truck destined for the interior of Mexico. During the last leg, the shipment was highjacked by bandits and forever lost.

The Court finds APL's Motion persuasive and holds that the Complaint should be dismissed on the basis of forum non conveniens.

## I. FACTUAL BACKGROUND

Plaintiff is a Mexican corporation, authorized to do business in Texas, which was the insurer for the consignee of the shipments in question, and is subrogated to consignee's claims. Defendant is a Delaware corporation authorized to do business in Texas. Defendant has offices in Oakland, California; Denver, Colorado; Houston, Texas; Laredo, Texas; and in various cities in Mexico, including Mexico City and Guadalajara.

This case involves two shipments of goods. The first shipment commenced on or about September 25, 1993, when Defendant issued a bill of lading and other forwarding documents covering the contents of two containers of 1,419 packages of electronic equipment shipped from Tokyo, Japan for Sony to Mexico City, Mexico for Comercializadora Deltra S.A. de C.V. ("Deltra"), a Sony affiliate and Plaintiff's subrogor. Defendant shipped the goods to Los Angeles, California on a vessel that it owned and operated, the M/V President Monroe. Defendant then shipped the cargo by rail to San Antonio, and by truck to Laredo, Texas, where it arrived on or about November 23, 1993. It was transported by truck to Nuevo Laredo, Mexico. The cargo was subsequently loaded onto a different trucker's vehicles, which then set out for the interior of Mexico. The shipment was highjacked and never found. Apparently, the empty container was eventually retrieved and is now in storage in Houston, Texas. Plaintiff claims the value of the shipment was $1,047,854.44, for which it seeks money damages. There is no question that the cargo was stolen while in Mexico.

The second shipment originated on or about October 26, 1993, when Defendant issued a bill of lading covering contents of a container of 1,480 packages of electronic equipment shipped from Port Newark, Klang, Malaysia for Sony through the United States to Guadalajara, Mexico for Deltra, Plaintiff's subrogor. Defendant owned and operated the vessel which transported the goods from Malaysia to Los Angeles, California, the M/V OOCL Fame. The goods then were shipped by rail to San Antonio, then by truck to Laredo, where they arrived on or about November 30, 1993. A truck moved them to Nuevo Laredo, just inside Mexico, where they finally were taken by a Mexican truck company (in a Mexican owned vehicle with a Mexican driver) to the interior of Mexico. The goods were destined for Mexico City, but were stolen en route, in the interior of Mexico. Plaintiff seeks money damages in the amount of $476,273.90 for the loss of this cargo.

Plaintiff alleges first that APL was "negligent in failing to provide adequate security and take adequate precautions to prevent the loss of the cargo," and that "APL also is liable for negligent entrustment of goods to third parties during the cargo's carriage." First Amended Complaint, ¶ X, at 4 ("Complaint"). Plaintiff also argues that the doctrine of *res ipsa loquitur* applies since, "in the ordinary course of events, [no loss would have occurred] without negligence on behalf of the Defendant, which negligence proximately caused the loss in question." *Id.* ¶ XI, at 5. Alternatively, Plaintiff claims that Defendant negligently entrusted the goods to third parties. *Id.* ¶ XII. Finally, Plaintiff argues that Defendant was a bailee of Deltra, Plaintiff's subrogor, and therefore Defendant had a duty to exercise care in transporting and storing the cargo. Defendant allegedly failed to exercise the requisite care and therefore, Plaintiff argues, its losses resulted from the breach of Defendant's duties as a bailee.

## II. PARTIES' CONTENTIONS

Defendant contends that this case is governed by the doctrine of *forum non conveniens*, since there is an adequate alternative forum available for adjudication of this dispute in Mexico. Further, Defendant argues that the private and public interests of the parties and Texas citizens support dismissal of Plaintiff's Complaint on *forum non conveniens* grounds. Defendant relies principally on *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), and *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In addition,

it relies heavily on *In re Air Crash Disaster Near New Orleans, LA. on July 9, 1982*, 821 F.2d 1147 (5th Cir.1987) (en banc), *vacated sub nom. Pan Am World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *and reinstated save as to damages sub original nom.*, 883 F.2d 17 (5th Cir.1989).

Plaintiff argues strenuously that dismissal is inappropriate because strong deference should be paid to Plaintiff's choice of forum. Moreover, argues Plaintiff, the factors applicable under the *forum non conveniens* analysis weigh heavily in favor of retaining jurisdiction in either Houston or Laredo, Texas.

Plaintiff contends that the bill of lading contains a "clause paramount" (¶ 2) stating that the U.S. Carriage of Goods by Sea Act ("COGSA") applies to any dispute arising out of the transportation agreement. Further, Plaintiff argues that the Carmack Amendment, an amendment to the Interstate Commerce Act that imposes liability on certain carriers for the loss of goods, 49 U.S.C. § 11707, *et seq*, extends to the entire time the carrier is responsible for the goods under the transportation agreement. The net effect of these two statutes, according to Plaintiff, is (1) that United States law governs its losses, (2) that any limitation of liability less than $500.00 per package is void pursuant to COGSA, and (3) that Defendant's attempt to apply a further limitation of liability as set forth in a Mexican Liability Clause is invalid. Finally, Plaintiff argues that Defendant's own contract, as modified by United States law, requires the litigation of this claim in the United States.

These arguments were addressed in great detail in *Seguros I* and rejected by Judge Lake. This Court agrees with Judge Lake's reasoning in its entirety.

Plaintiff tries to distinguish Judge Lake's case, and argues that the *forum non conveniens* factors support retention by this Court of the case. However, as described below, these arguments are unavailing. Plaintiff's attempts at developing variations on its theme by arguing slightly different legal theories does not change the analysis.

## III. LEGAL ANALYSIS

### A. Collateral Estoppel

Judge Lake in great detail analyzes the contracts in issue. While Plaintiff served as the insurer for different companies, the contracts in issue are identical. The only possible exception is with respect to the first shipment before this Court. Plaintiff argues that the Mexico Liability Clause on which Judge Lake relied for some of his reasoning is inapplicable because it was not attached to the first shipment's bill of lading. However, Defendant has submitted the Declaration of Adibah Amin, which establishes without contradiction in the record that the Mexico Liability Clause (which dictates that Mexican law governs APL's liability) was in fact attached to the original bill of lading provided to the original shipper. Plaintiff has supplied no contrary evidence. Its efforts to rely on Mr. John Doran, APL's operations manager in Laredo, are unavailing. Doran states that he did not see the Mexico Liability Clause on the copy of the bill of lading he received, and that there is no explicit reference to it on page 1 of the document. Doran Depo. at 172. However, Doran's testimony makes it clear that, as an employee of APL–Laredo, he would not be in a position to see the original documentation. In fact, he acknowledges that discussion of the Clause between the shipper and the customer prior to a contract would occur between the APL salesman in the Far East and the owner or seller of the goods. *Id.* Thus, he would not be in a position in the ordinary course to know if the clause had been discussed or agreed to.[2]

 Defendant's arguments are unrebutted in the record before the Court. Thus, the Court finds that the conditions necessary for collateral estoppel to apply have all been satisfied in this case:

---

**2.** This issue does not arise as to the second shipment, since its bill of lading contains a reference to the Mexico Liability Clause on its face, a copy of which was appended to the document. Plaintiff's Supplemental Response, Exh. I.

1. The issues under consideration in a subsequent action must be identical to the issue litigated in a prior action;

2. The issues must have been fully and vigorously litigated in the prior action;

3. The issues must have been necessary to support the judgment in the prior action; and

4. There must be no special circumstance that would render preclusion inappropriate or unfair.

*See Copeland v. Merrill Lynch & Co., Inc.,* 47 F.3d 1415, 1421–22 (5th Cir.1995), *citing United States v. Shanbaum,* 10 F.3d 305, 311 (5th Cir.1994). *See also* 18 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4436, at 346 (1981) (noting that collateral estoppel is appropriate in the *forum non conveniens* context if the issue remains the same).

Plaintiff cites *Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1498 (5th Cir.1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994), for the proposition that collateral estoppel does not apply to a prior determination of *forum non conveniens* if objective facts materially alter the considerations underlying the previous decision. Plaintiff's Reply to Defendant's Supplemental Response to Defendant's Motion to Dismiss Based on *Forum Non Conveniens,* at 4. Plaintiff argues that, in this case, a central fact is different, *i.e.,* one of the bills of lading does not reference the APL "Mexican Liability Clause," and it is unclear whether the clause was attached to the bill of lading. *Id.* However, as discussed *supra* at 1305–1306, Defendant's evidence establishes that the Mexico liability clause was attached to the first bill of lading provided to the original shipper. Therefore, objective facts do not materially alter the considerations underlying Judge Lake's Order, and collateral estoppel is applicable to his decision upholding the parties' choice of Mexican law as witnessed by the Mexico Liability Clause. *Seguros I,* 910 F.Supp. at 1242.

■ In its opposition to APL's Motion to Dismiss before Judge Lake and in its Motion for Rehearing, Plaintiff amply raised all of the issues presented in the case at bar. For this Court to fail to apply collateral estoppel to Judge Lake's findings concerning the inapplicability of COGSA and the Carmack Amendment, and the validity of the parties' choice of law and the Mexico Liability Clause, would render the doctrine meaningless.

■ Plaintiff argues that Texas law applies to the *forum non conveniens* analysis, and since this argument was not raised in *Seguros I,* collateral estoppel is not a bar here. It is unclear whether this state law argument was argued to Judge Lake, but in any event, the argument lacks merit. Plaintiff argues in its Supplemental Response that this is a diversity case and, therefore, Texas law is applicable, despite the pendency of the case in Federal Court. Plaintiff claims that, under Texas law, *forum non conveniens* is no longer recognized in cases where the Plaintiff is authorized to do business in Texas. There appears to be no issue that Plaintiff has filed the necessary documentation with the applicable state agencies and is authorized to do business here. *See* Exhibit A to Plaintiff's Supplemental Response.

Defendant argues that Texas law does not apply to the *forum non conveniens* analysis. The Court agrees. There is no federal decision cited by Plaintiff in which the state venue law and state *forum non conveniens* authorities were applied. Plaintiff's sole meaningful citation is *American Dredging Co. v. Miller,* 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). The *Miller* case does not support Plaintiff, since it ruled that a state court hearing a maritime matter is free to apply the state's *forum non conveniens* analysis, despite the federal nature of the claims. *Miller* does not apply here.

Plaintiff also cites *Woods v. Interstate Realty Co.,* 337 U.S. 535, 538, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524 (1949), and *Farris v. Sambo's Restaurants, Inc.,* 498 F.Supp. 143 (N.D.Tex.1980), but these cases are inapposite. Numerous federal court decisions make clear that there is no basis to apply state law to a procedural question. The text book decision, *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires that federal courts apply state substantive law in diversity cases, but

apply federal procedural rules and authorities. *Forum non conveniens* and venue are procedural doctrines in the classic sense. Moreover, the Fifth Circuit has held that "a federal court sitting in a diversity action is required to apply the federal law of *forum non conveniens* when addressing motions to dismiss a plaintiff's case to a foreign forum." *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir.1993), *cert. denied,* — U.S. ——, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995), *quoting In re Air Crash Disaster Near New Orleans,* 821 F.2d at 1159.

### B. *Forum Non Conveniens*

The *forum non conveniens* factors also are discussed by Judge Lake in his decision. That discussion is equally applicable here. The collateral estoppel doctrine thus applies on those issues as well. In an excess of caution, however, the Court will consider the *forum non conveniens* factors as applied to the facts of this case.

■ A *forum non conveniens* analysis involves a three step inquiry. *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 835 (5th Cir.1993), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2963, 125 L.Ed.2d 663 (1993).

■ First, the court must determine whether an available and adequate forum exists. *Id.* A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. *In re Air Crash Disaster Near New Orleans,* 821 F.2d at 1165. A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court. *Id.*

■ If the court concludes that the foreign forum is both available and adequate, it should then consider the second step in the analysis, which requires a balancing of "private interest" factors. *Id.* Such factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (3) probability of an opportunity to view the premises, if view would be appropriate to the action; and (4) other fac-

tors affecting the ease, speed and expense of trial or the enforceability of a judgment if obtained. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843; *In re Air Crash Disaster Near New Orleans,* 821 F.2d at 1162–63.

■ If the private interest factors do not weigh in favor of dismissal, the Court must then consider the public interest factors. *Id.* at 1165. Such factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in the forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of a foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6.

■ "[A] forum non conveniens dismissal must be based on the finding that, when weighed against the plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Delgado v. Shell Oil Co.*, 890 F.Supp. 1324, 1356 (S.D.Tex.1995) (citation omitted). Defendants bear the burden of persuasion as to all the elements of the *forum non conveniens* analysis. *In re Air Crash Disaster,* 821 F.2d at 1164.

### 1. *Availability of an Adequate Alternative Forum*

#### a. *Availability*

■ Plaintiff argues that Defendant has not shown that Mexico is an available or an adequate foreign forum and that Defendant bears the burden of proof on this issue. Although Defendant bears the burden of persuasion as to this and all elements of the *forum non conveniens* analysis, *id.,* APL has stipulated that it will appear in the appropriate Mexican forum in which Plaintiff has filed suit, if suit is initiated within ninety (90) days of the entry of a dismissal on *forum non conveniens grounds.* Defendant's Motion to Dismiss, at 17. "[D]efendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of

[this] analysis." *Veba–Chemie A.G. v. M/V Getafix,* 711 F.2d 1243, 1245 (5th Cir.1983).

### b. *Adequacy*

Plaintiff argues that the Mexican courts are not an adequate forum to hear this case. Plaintiff's Supplemental Response, at 15–16. First, Plaintiff argues that recovery in Mexico will be limited to approximately $2.38/ton, versus a possible $500.00 per package limitation in the United States. Second, Plaintiff argues that its claim is time-barred under Mexican law and, without an affirmative statement to the contrary by Defendant, a Mexican court would dismiss the case summarily. *Id.* Finally, Plaintiff argues that Mexican courts are unfamiliar with cargo carriage litigation and a fair trial will be unavailable to Plaintiff as a result. *Id.* at 16.

■■■■ *Plaintiff's Limitation on Recovery Argument.*—Plaintiff cites *Irish Nat'l Ins. Co. v. Aer Lingus Teoranta,* 739 F.2d 90 (2nd Cir.1984), for the proposition that, where the amount recoverable in the foreign forum is so small that the likelihood is that the case will never be tried in the foreign forum, the United States court should retain jurisdiction. The same argument was made in *Seguros I* and rejected by Judge Lake. Citing a number of Fifth Circuit and district court cases, Judge Lake concluded that "[a]s long as Seguros is not deprived of any remedy or treated unfairly in the courts of Mexico, the comparable amount of recovery is not a factor to be addressed by the court in this case." 910 F.Supp. at 1245.[3] This Court agrees and therefore concludes that an adequate alternative forum exists even though Plaintiff may not find a substantially comparable remedy in a Mexican court.

■■■■ *Plaintiff's Statute of Limitations Argument.*—Plaintiff argues that this case is time-barred and therefore cannot be dismissed on *forum non conveniens* grounds. Plaintiff's Supplemental Response to Defen-

dant's Motion to Dismiss, at 16. Plaintiff's expert testifies (without citation to controlling provisions from the Mexican Civil Code or judicial precedent) that under Mexican law, (1) all actions resulting from a bill of lading are time-barred twelve months from the date the goods are delivered to the receiver, and (2) that time bar periods are fatal; no restitution of rights is permitted once the time bar is extinguished. Plaintiff's Supplemental Response, Exh. E (Unsworn Declaration of Maria Del Pilar Martinez Corona), ¶¶ 4 and 5. Because more than twelve months have passed since the losses occurred, Plaintiff argues that it will have no recourse in the Mexican courts and that, in the interest of justice, the case should not be dismissed in the United States.

Defendant counters Plaintiff's expert testimony with the declarations of Roberto Rendon. Rendon's Supplementary Declaration contains an excerpt from the Civil Code of Mexico indicating that the applicable statute of limitations is six months rather than twelve months as argued by Plaintiff's expert. Defendant's Supplemental Reply, Exh. F (Complementary Declaration of Roberto Rendon), at 2–3. More importantly, however, Rendon cites a precedent rendered by the Mexican Supreme Court indicating that statutes of limitations are "proper exceptions" or defenses and, as such, may be waived by the defendant. *Id.* at 3–5. Defendant has stipulated that it will waive any statute of limitations defense in the Mexican proceedings that has matured since Plaintiff commenced this action in Texas. Defendant's Motion to Dismiss, at 17.

The Court credits Rendon's testimony as to waiver of defenses under Mexican law. Therefore, the Court finds that Defendant has met its burden of establishing that the Mexican courts are an adequate forum in which to litigate this dispute. However,

---

**3.** *See, e.g., Syndicate 420 at Lloyd's London v. Early American Ins. Co.,* 796 F.2d 821, 829 (5th Cir.1986) (circumstances in which the remedy afforded by the alternative forum will be so inadequate or unsatisfactory that dismissal is not warranted do not arise unless a party will be deprived of any remedy or will be treated unfairly); *Alma Torreblanca de Aguilar v. Boeing Co.,*

806 F.Supp. 139, 143 (E.D.Tex.1992), *aff'd,* 11 F.3d 55 (5th Cir.1993), *cert. denied,* —— U.S. ——, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995) (the comparable amount of recovery obtainable in the alternative forum has never been considered a factor relevant to the *forum non conveniens* analysis).

should a Mexican court, when Plaintiff's action is brought in Mexico, determine that that action is time-barred and dismiss the action, this Court will reopen this case and consider a transfer to the Laredo Division pursuant to Fed.R.Civ.P. 60. Dismissal is therefore conditioned upon the willingness of the Mexican courts to hear this case as transferred by a sister American Court. *See Syndicate 420 at Lloyd's London,* 796 F.2d at 830; *Delgado,* 890 F.Supp. at 1357.

■ *Plaintiff's Unfairness Argument.—* Plaintiff's expert states that Mexican courts are unfamiliar with matters involving carriage of goods under bills of lading and that, as a result, Plaintiff may not receive a fair trial in Mexico.[4] Corona Declaration, ¶ 6. Defendant's expert testifies that Mexican courts are, in fact, familiar with cargo carriage litigation and cites a number of transportation decisions of the Mexican Supreme Court and Federal Collegiate Courts. Rendon Complementary Declaration, Annex I. While the Corona Declaration is totally conclusory and thus lacks significant weight, the Court deems Defendant's expert's testimony similarly unsubstantial and unpersuasive. None of the cases cited by Rendon is recent authority; most date from the late 1950's and early 1960's. This is academic, however, because, as Judge Lake noted, regardless of where this case is heard, Mexican law will be applied to the parties' dispute. *Seguros I,* 910 F.Supp. at 1245. Therefore, as a corporate citizen of Mexico, Plaintiff is not prejudiced by the Mexican courts applying Mexican law to resolve its claims. *Id.*

Moreover, even if Mexican courts are unfamiliar with cargo carriage litigation as Plaintiff argues, that does not mean that Plaintiff will not receive a fair trial in a Mexican court. "It would be the height of presumption to insist on the 'parochial concept that all disputes must be resolved under our law and in our courts,' and that anything short of American justice is inadequate." *Neo Sack, Ltd., v. Vinmar Impex, Inc.,* 810 F.Supp. 829, 834 (S.D.Tex.1993) (citations omitted). On the present record, there is insufficient

evidence before the Court to conclude that Plaintiff will not receive a fair trial in a Mexican court. However, if Plaintiff produces competent evidence that it has been treated fundamentally unfairly in a Mexican court, this Court will consider reopening this case and will consider a transfer to the Laredo Division, as discussed above.

### 2. *Private Interest Factors*

Once a court has concluded that a "foreign forum is both available and adequate, it should then consider all of the relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum." *In re Air Crash Disaster Near New Orleans,* 821 F.2d at 1165.

■ "Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Piper Aircraft v. Reyno,* 454 U.S. at 256, 102 S.Ct. at 266. Therefore, Judge Lake found that, although Plaintiff chose a Texas forum, no substantial deference is due because Plaintiff is a citizen of Mexico. *Seguros I,* 910 F.Supp. at 1246. Plaintiff cites *R. Maganlal & Co. v. M.G. Chemical Co., Inc.,* 942 F.2d 164, 168 (2nd Cir.1991), for the proposition that the fact that Plaintiff is a foreign corporation is not an invitation to accord its choice of forum no deference. Plaintiff's Response, at 9. As Plaintiff correctly points out, the Second Circuit found in *Maganlal* that a foreign plaintiff's choice of forum is entitled to some weight. *Id.* That is not to say that Plaintiff's choice of forum is controlling, however. "[S]ince a foreign plaintiff's choice of forum is entitled to some weight, a defendant must still show that the balance of convenience sufficiently favors trial in the foreign forum to overcome the presumption in favor of plaintiff's choice." *Id.* However, the burden normally on a defendant to show that the balance of private interests is strongly in its favor applies with less force when a foreign plaintiff has chosen a United States court.

---

4. In *Syndicate 420 at Lloyd's London,* 796 F.2d at 829, the Fifth Circuit suggested that a foreign forum is inadequate when either no remedy is available or a party will be treated unfairly in a foreign court.

**1310**

*Alma Torreblanca de Aguilar v. Boeing Co.,*
806 F.Supp. at 143.

In determining whether a particular forum is appropriate, the Court is required to balance the private interests of the litigants, including (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (3) probability of an opportunity to view the premises, if view would be appropriate to the action; and (4) other factors affecting the ease, speed and expense of trial or the enforceability of a judgment if obtained. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843; *In re Air Crash Disaster Near New Orleans,* 821 F.2d at 1162–63.

### a. *Relative ease of access to sources of proof*

█ Despite Plaintiff's strenuous arguments to the contrary, Plaintiff's claims arose in Mexico, not in the United States or Texas, when a *Mexican* truck driven by a *Mexican* driver on *Mexican* highways was highjacked (presumably) by *Mexican* thieves. Fundamentally, this case involves a determination of the circumstances surrounding selection of the route, the reasons for the loss of the cargo and the damages associated therewith, as available under Mexican law. The fact that the last point that the goods were located while in the United States was Laredo, Texas, is of little significance to resolution of the liability, causation or damages issues. Although several Laredo-based witnesses may provide relevant testimony in this case, *see infra* at 1310–1311, the activities in Laredo were simply not the cause of Plaintiff's losses, as the Doran deposition establishes.

Doran testified that, while the Laredo office arranges for containers to cross the border into Nuevo Laredo, the Mexico City office contracts and arranges for their long-haul trucking from Nuevo Laredo to the Mexican interior.[5] Doran Depo. at 116, 154. Moreover, his deposition indicates that the goods were under the supervision of APL's Mexico City office when they were stolen; once the cargo left Nuevo Laredo, "the responsibility for the movement was transferred to Mexico City." *Id.* at 229. In addition, the selection of the truckers to take the goods into the interior of Mexico was the exclusive responsibility of the APL–Mexico representatives. *Id.* at 190. Therefore, to the extent that Defendant's negligence is under scrutiny, it was that of APL–Mexico rather than APL–U.S. (Laredo or Houston) which allegedly gave rise to Plaintiff's damages.[6]

Plaintiff argues that the sources of proof of Defendant's negligence are all in the United States. Plaintiff's Response to Defendant's Motion to Dismiss, at 9. However, because the alleged negligence by Defendant relates primarily to the selection by APL–Mexico of the Mexican truckers, and the selection of the overland route through Laredo, sources of proof will primarily be found in Mexico or at the place of contracting in the Far East, rather than in the United States. Little, if anything, in the record indicates that material events occurred in Houston, Texas.

Plaintiff has provided a long list of witnesses in the United States, including a few APL employees in Texas and California.[7] Defendant has not provided a witness list by

---

**5.** Plaintiff contends that the administration of the APL contract for carriage was done from Laredo, Texas and/or the United States. However, this conclusion is unsupported by any evidence and is directly contradicted by the deposition testimony of John Doran, who testified that APL's Mexico City office contracts for the Mexican long-haul trucking of the containers to their final destination in Mexico. Doran Depo. at 154.

**6.** To the extent that the record contains information about the selection of the course of transport, Defendant's customers appeared to have selected Laredo as the location where they wanted their goods to clear customs into Mexico. Doran Depo. at 238–39.

**7.** Plaintiff lists 23 witnesses in Laredo, Texas (four of whom are APL employees); six witnesses in Houston, Texas (four of whom are APL employees); two witnesses in Oakland, California (both of whom are APL employees); and one witness in San Pedro, California (an APL employee). Plaintiff's Response, at 22–25. In addition, Plaintiff states that an investigation into who might have leaked information concerning the contents of any container will require testimony of the employees of one of several Laredo companies. Plaintiff's Supplemental Response, at 12–13.

name but contends that witnesses with information relevant to Plaintiff's losses will be found in Mexico rather that the United States. Defendant's Supplemental Reply, at 11. Defendant's witnesses include APL employees in Mexico City, the police in Mexico who investigated the highjackings, and employees of the Mexican long-haul trucking company which transported the goods from Nuevo Laredo to their respective destinations in Mexico. Defendant's Motion, at 10–11; Defendant's Supplemental Reply, at 12.

Reviewing what appears to be a comparable witness list, Judge Lake found that four relevant witnesses reside in Texas, two in California, one in Malaysia, and twelve in Mexico.[8] *Seguros I*, 910 F.Supp. at 1246. Judge Lake also found that language barriers could prevent an expeditious trial in Texas, that expert testimony on Mexican commercial and transportation law would be required, most likely from witnesses in Mexico, and that the need for expert witnesses on Mexican law and custom could be eliminated or greatly reduced if the case were tried in Mexico. On the basis of these considerations, Judge Lake concluded that ease of access to witnesses in Texas if the case were tried in Mexico weighed in favor of dismissal. *Id.* Because significant portions of relevant documents required translation from Spanish into English, Judge Lake further concluded that the issue of convenience of witnesses and cost to the parties weighed in favor of dismissal. *Id.* at 1247.

Defendant argues also that most of the documentary and physical evidence concerning the highjackings in this case is in the custody of the Mexican police, Plaintiff or APL employees in Mexico City. Defendant further argues that many documents will be in Spanish and will require translation if the case is litigated in Houston, and that a trial in a United States court will necessitate the hiring of experts trained in Mexican law. Both considerations, Defendant argues, will use valuable court time and increase the costs to the litigants. Plaintiff does not meaningfully respond to these arguments.

The Court finds these arguments persuasive. Moreover, adopting Judge Lake's reasoning, the Court finds that ease of access to both witnesses and documents weighs in favor of dismissal. The losses in this case occurred in Mexico, after the goods had passed safely into and out of Laredo and Nuevo Laredo. Only when the containers were highjacked in the interior of Mexico did they become distinguishable from the thousands of others passing uneventfully through Laredo and Nuevo Laredo each year. Therefore, despite numerous Laredo-based witnesses on Plaintiff's witness list, most appear to lack relevant knowledge of the losses which subsequently occurred.

In addition, to the extent that Plaintiff seeks to attack the choice of movement through Laredo rather than a different entry point into Mexico, Laredo has no materiality to this case. Defendant's allegedly negligent routing may be analyzed more effectively by a Mexican court with greater evidence of crimes or highjackings on alternative Mexican routes than would be available to a United States court.

b. *Availability of compulsory process for attendance of unwilling witnesses and the costs of obtaining attendance of willing witnesses*

Judge Lake found that, because many of the potential witnesses reside in Mexico, and transporting them to Texas would be expensive and time consuming, cost considerations dictated that trial in Mexico would be far more expedient. *Seguros I*, 910 F.Supp. at 1247. This Court's concern is equally applicable here. Moreover, Defen-

---

**8.** Giving a "generous reading" to Plaintiff's negligence theories, Judge Lake identified as potentially necessary witnesses Patty Cruz, Dan Compton, Juan Molina and John Doran of APL's Laredo office, and Bob Fretinsky and Dan Pendleton of the APL–Oakland office. *Seguros I*, 910 F.Supp. at 1247 n. 28. Each of these witnesses is included on the witness list submitted by Plaintiff in this case. *See* Plaintiff's Response, at 22–25. Using the same standard to evaluate Defendant's witness list, Judge Lake identified as potentially relevant witnesses the five employees of APL's Mexico City office who were responsible for contracting with the long-haul trucker in Mexico, the Mexican police officer in charge of the investigation of the hijacking, and the four employees of the Mexican trucker listed by Defendant who are relevant to the negligent entrustment claim. *Seguros I*, 910 F.Supp. at 1247 n. 28.

dant has stipulated that it will make available in the Mexican proceedings all relevant documents under its control and all relevant witnesses who were its employees at the time of the alleged incident and who remain its employees at the time of trial in Mexico, to the extent not protected by the privilege and confidentiality laws of Mexico. Defendant's Motion to Dismiss, at 17. Although the parties appear to dispute who constitutes a "relevant witness," [9] the Court conditions dismissal on Defendant's agreement to produce *all* U.S. witnesses with knowledge of relevant facts relating to Plaintiff's losses. The record indicates that these witnesses will include, at a minimum, John Doran, Patty Cruz, Dan Compton and Juan Molina of APL's Laredo office, and Bob Fretinsky and Dan Pendleton of APL's office in Oakland.[10] Moreover, as to Laredo APL witnesses, if, in fact, they prove to be relevant, the Court knows of no reason that these witnesses cannot be deposed in Laredo, regardless of where the case is pending.

Judge Lake also found that the cost of compulsory process for attendance of unwilling witnesses presented a significant obstacle to maintaining jurisdiction in the United States. *Seguros I*, 910 F.Supp. at 1247. In the case at bar, Defendant reurges the arguments made in *Seguros I*: that the Mexican long-haul trucking company is not subject to personal jurisdiction and cannot be added to this suit as a party, and that the witnesses employed by the Mexican trucking company cannot be compelled to testify by this Court. Defendant's Reply, at 11. The Court finds these arguments persuasive. The testimony of unwilling nonparty witnesses in Mexico can only be obtained through letters rogatory pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231. If answered, letters rogatory require substantial deposition testimony. This process is time consuming and, if the parties fail to cooperate, ineffective. Moreover, conducting a substantial portion of a trial on deposition testimony, as Judge Lake observed, precludes the trier of fact from the important function of evaluating the credibility of witnesses. *See also Alma Torreblanca de Aguilar v. Boeing Co.*, 806 F.Supp. at 144. Because these problems can be avoided by litigating this case in Mexico rather than in the United States, the Court concludes that availability of compulsory process weighs in favor of dismissal.

### c. *Possibility of view of the premises*

Plaintiff next argues that premises view is hardly a practical consideration in a case in which the pertinent view would be of an empty road in Mexico with no evidence of a theft which occurred over two years ago. Plaintiff's Response, at 11.[11] The Court disagrees. As Judge Lake found, examining the condition of the highway could provide evidence relating to Defendant's alleged negligence in selecting the particular route for the journey, a factor relevant to Plaintiff's claim that Defendant was negligent in failing to provide adequate security within Mexico. *Seguros I*, 910 F.Supp. at 1247. In addition, litigation in Mexico would provide access to the long-haul Mexican trucking company as

---

9. Plaintiff argues that Defendant has attempted to stand in the way of depositions of its U.S. witnesses by filing a Motion for Protective Order [Doc. # 28]. Defendant counters that it "will make all of its witnesses available for deposition in connection with [the] Mexican litigation," but that it opposes depositions of further U.S. witnesses without "relevant knowledge of material facts relating to [Plaintiff's] loss." Defendant's Reply, at 11.

10. To the extent that Plaintiff obtains evidence that there are security leaks within APL or other companies handling the goods in Laredo, *see* Plaintiff's Supplemental Response, at 12–13, other witnesses may become relevant and the Court expects Defendant to produce additional witnesses.

11. Plaintiff argues that the instrumentalities that should be viewed are the empty containers, now located in Houston, Plaintiff's Response, at 11, and that the only remaining physical evidence in this matter is in Houston. *Id.* at 20. The Court disagrees. The empty containers are of limited, if any, evidentiary value. Moreover, the presence of the containers in Houston (if, in fact, they have not been subsequently shipped elsewhere) does not establish a sufficient nexus to a United States forum to support venue in the Southern District of Texas. *See infra* at 1313–1314. In any event, there is no reason that the containers cannot be moved to the location of trial.

well as a view of its trucks, trucking facilities, and security procedures, factors relevant to Defendant's negligent entrustment claim. *Id.* Therefore, the Court concludes that the possibility of viewing the Mexican highway and, perhaps more importantly, the long-haul trucking company's facilities, weighs in favor of dismissal.

### d. Other practical problems that make trial of a case easy, expeditious and inexpensive

Judge Lake found that, because Mexican law applies to this dispute, a trial in Texas would present major difficulties for counsel and the Court. *Id.* Observing that Mexican statutory and case law are not readily available to the Court, Judge Lake noted that problems inherently arise when a court is forced to apply a law with which it is unfamiliar. *Id., citing Pain v. United Technologies Corp.*, 637 F.2d 775, 793 n. 101 (D.C.Cir. 1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). In addition, because translators and interpreters will be required to translate the large volume of evidence which will be presented to the Court in Spanish, the probable length and cost of the trial will be increased. *Id., citing Quintero v. Klaveness Ship Lines,* 914 F.2d 717, 729 (5th Cir.1990), *cert. denied,* 499 US. 925, 111 S.Ct. 1322, 113 L.Ed.2d 255 (1991). Therefore, the Court concludes that both these practical problems weigh in favor of dismissal.

### e. Enforceability of a judgment if a one if obtained

Defendant has permanent offices in Mexico and transacts business in Mexico on a regular basis. Moreover, Defendant agrees to satisfy any final judgment rendered by a Mexican court after appeal and further stipulates that, should it fail promptly to do so, this Court will resume jurisdiction over the

case.[12] Defendant's Motion to Dismiss, at 17–18. The Court concludes that this factor weighs in favor of dismissal. *Seguros Commercial Americas,* 910 F.Supp. at 1247 n. 28.

### f. Conclusion as to Private Interest Factors

The Court concludes that the private interest factors weigh in favor of dismissal of this case. Defendant has stipulated that it will appear in a Mexican court, waive any statutes of limitations defenses, make available relevant documents and witnesses and satisfy any final judgment. The Court finds on this basis that trial in Mexico "will best serve the convenience of the parties and the ends of justice." *Koster v. (American) Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947).

### 3. Public Interest Factors

■ Given the availability of an adequate forum in Mexico and the balance of private interest factors favoring dismissal, the Court need not need consider the public interest factors. *See Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.,* 955 F.2d 368, 376 (5th Cir.1992). Although the private interest factors favor dismissal, the Court will evaluate the public interest factors nonetheless, which also weigh in favor of dismissal.

■ The central question a court must answer when considering the public interest is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it. *Neo Sack, Ltd. v. Vinmar Impex, Inc.,* 810 F.Supp. 829, 838 (S.D.Tex.1993), *citing Pain v. United Technologies Corp.,* 637 F.2d 775 (5th Cir.1980).

The Court's examination of the public interest considerations indicates that an insuf-

12. Plaintiff argues that, should it prevail in a Mexican court, ultimately, this case will have to return to the United States for a collection effort, since APL's Mexican office is just a creation for Mexican tax purposes. Doran testifies, however, that "the name [APC de Mexico] was created for financial tax reasons," Doran Depo. at 137, not that the Mexican office is just a "creation for tax purposes." Plaintiff's Response, at 26. Whatever the status of APL's Mexican office, the Decla-

ration of Roberto Rendon indicates that, pursuant to the Mexican Commercial Code and the Code of Civil Procedure for the Federal District (Mexico City), Plaintiff may enforce a judgment gained in a Mexican court through an attachment of Defendant's assets. Defendant's Motion to Dismiss, Unnumbered Exh. (Declaration of Roberto Rendon), at 6. Therefore, the Court rejects Plaintiff's collection argument.

ficient nexus with Houston or Texas exists at this time in this case. Plaintiff's arguments notwithstanding, Mexico rather than Houston or Laredo is the focal point of the parties' dispute. The activities in Laredo were not the cause of Plaintiff's losses, and the involvement of the Laredo office was merely incidental to the containers' uneventful passage across the border into Nuevo Laredo. The fact that the last point in the United States that the goods were located is Laredo is immaterial to the central issues in the case—selection of the route, the reasons for the shipments' loss, and the damages available to Plaintiff under Mexican law. Therefore, the Court concludes that the case lacks a general nexus with the Southern District of Texas—Laredo or Houston—sufficient to justify this Court's or the Laredo federal court's commitment of time and judicial resources.

Moreover, for reasons similar to those described above, the public interest factors generally considered in a *forum non conveniens* analysis weigh in favor of dismissal. These include:

a. The administrative difficulty flowing from court congestion;

b. The local interest in having localized controversies decided at home;

c. The interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;

d. The avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and

e. The unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6.

### a. *Administrative difficulties flowing from court congestion*

The courts of this district are congested with cases having a far greater nexus to Texas and to the United States than this dispute. *Seguros Commercial Americas,* 910 F.Supp. at 1248. The demands of a sizeable case criminal docket and the priority given to criminal cases leads to an inevitable backlog

of civil cases. *Id.* Therefore, conservation of judicial resources is an extremely important objective. *Id.* The Court concurs in Judge Lake's finding that it is not in the public interest to burden this docket and the litigants with a case that has only a limited connection to and no precedential impact upon the local community. *Id., citing Cuevas v. Reading & Bates Corp.,* 577 F.Supp. 462, 476 (S.D.Tex.1983), *aff'd,* 770 F.2d 1371 (5th Cir.1985), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La. on July 9, 1982,* 821 F.2d 1147 (5th Cir.1987). Because Plaintiff is a foreign corporation, the Court finds that *forum non conveniens* dismissal is warranted to relieve docket backlog. United States citizens should not be forced to wait in the corridors of our courthouses while foreign causes of action are tried. *Quintero v. Klaveness Ship Lines,* 914 F.2d at 729.

### b. *The local interest in having localized controversies decided at home*

This case involves a Mexican plaintiff alleging a loss in Mexico under Mexican law. Therefore, the citizens of this district and of the United States as a whole have little interest in the outcome of this case. Moreover, because Mexican law applies, the decision in this case would have no precedential impact in the United States. *See Neo Sack,* 810 F.Supp. at 839. Therefore, the Court concludes that this factor weighs in favor of dismissal.

### c. *The interest in having a diversity case tried in a forum that is familiar with the law governing the action; and*

### d. *The avoidance of unnecessary problems of the conflict of laws or the application of foreign law*

The Mexican liability clause establishes that Mexican law will apply in this case. This is a pivotal factor in the Court's decision to decline jurisdiction. *See Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843. The courts of Mexico have far more institutional competency in the application of their own law than does this Court. *Seguros I,* 910 F.Supp. at 1249. Mexico also has a strong interest in resolving controversies regarding the safety of its public highways and in enforcing the rights of its

own corporations when they have suffered a loss within Mexico. *Id.* Therefore, the Court concludes that both factors weigh in favor of dismissal.

### e. *The unfairness of burdening citizens in an unrelated forum with jury duty*

Plaintiff originally requested a jury trial but subsequently withdrew its request. Supplemental Joint Discovery/Case Management Plan [Doc. # 62], at 6. Therefore, the Court need not consider this factor.

### f. *Conclusion*

Each of the applicable public interest factors weighs in favor of dismissal. The burden on the Court to decide a claim arising under the laws of Mexico with significant evidence in Mexico and no local precedential value requires that this case be tried in Mexico.

## IV. *ORDER*

The Court finds that the interests of the parties and of the public are better served by dismissing the instant action on *forum non conveniens* grounds. The courts of Mexico provide an available, adequate, and appropriate forum for the resolution of this dispute.

Therefore, it is ORDERED that this case is dismissed under the following conditions:

1. Within ninety (90) days of the date of this Order, Defendant shall submit to the jurisdiction of the appropriate Mexican court in which Plaintiff has filed suit;

2. Defendant shall waive any statute of limitations defenses that could be posed in the Mexican court;

3. Defendant shall make available in the Mexican proceedings all relevant documents and witnesses within its control;

4. Defendant shall make available any discovery taken in this action in the Mexican proceeding; and

5. Defendant shall satisfy and final judgment rendered by a Mexican court after appeal. It is further

ORDERED that the United States District Court for the Southern District of Texas shall resume jurisdiction over this case if

Defendant fails to meet any of the above conditions.