**Opinion filed December 3, 2009**



In The

# Eleventh Court of Appeals

———————

## No. 11-08-00030-CV

———————

## FORD MOTOR COMPANY AND BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE LLC, Appellants
## V.
## ROSALVA SANCHEZ VILLANUEVA ET AL, Appellees

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Court Cause No. 04-09-07999**

### O P I N I O N

Nadia Alejandra Sanchez Villanueva bought a used 1996 Ford Explorer in Mexico. Villanueva and some other citizens of Mexico decided to take the Explorer on a trip from Monterrey, Mexico, to Nuevo Laredo, located in the Mexican State of Tamaulipas. During the trip, the vehicle rolled over. Some of the eleven occupants of the vehicle were killed, and others were injured.

The Mexican Federal Highway Patrol found that speed, overloading, and driving with tires that were in bad condition were all factors that contributed to the accident. Alleging, among other things, that the right rear tire on the vehicle separated and caused the accident, the appellees brought suit against appellants in the State of Tennessee. Because Mexico was the appropriate forum, that lawsuit was dismissed by the trial court under the doctrine of forum non conveniens and in accordance with a decision by the Tennessee Court of Appeals regarding this and other like claims.

The record shows that Texas has no connection with this case except for the fact that, after a Tennessee Court, for forum non conveniens grounds, dismissed appellees' lawsuit there, they filed it in Dallas County. None of the events surrounding this accident occurred in the State of Texas. Neither any of the occupants of the vehicle nor any of the appellees had ever been residents of the State of Texas or any other state in the United States of America. They were citizens of the Republic of Mexico. But, on July 19, 2004, appellees filed this lawsuit in Dallas County.

The case was transferred to a multi-district pretrial court. *See* TEX. R. JUD. ADMIN. 13.5. Appellants unsuccessfully sought to have the MDL court honor the Tennessee order and dismiss the case. Appellants also moved to dismiss the Dallas County lawsuit under the doctrine of forum non conveniens.

Ultimately, the MDL court dismissed the lawsuit and found that Mexico was an available and adequate alternative forum. The MDL court also made other findings in support of its dismissal order. There has been no appeal from the dismissal. However, appellants do quarrel with some of the terms and conditions upon which the MDL court dismissed the lawsuit, and they bring those matters to us in four issues: they claim that the MDL court abused its discretion when it set certain of the term and conditions. They do not take issue with other conditions set by the MDL court. Because we agree with the arguments made by appellants in each of their four issues, we reverse and remand.

An appellate court reviews a decision regarding a stay or dismissal for forum non conveniens reasons for an abuse of discretion. *In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008); *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 676 (Tex. 2007). A part of the consideration for a stay or dismissal involves a determination by the trial court of what is required in the interest of justice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(a) (Vernon 2008). Likewise, the terms and conditions for a dismissal or stay of an action for forum non conveniens reasons are to be as the interests of justice require, with due regard to the rights of the parties to the action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(c) (Vernon 2008). Our review of the propriety of the trial court's terms and conditions is for an abuse of discretion.

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles. In other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Even though a trial court may decide a matter within its discretion in a

2

different manner than would the appellate court in a similar circumstance, that does not mean an abuse of discretion has occurred. *Id*. But, a trial court does not have discretion to determine what the law is or to apply the law to the facts; therefore, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Ehrlich v. Miles*, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

The MDL court's action under Section 71.051(c) is the focus of all four of appellants' complaints. The provisions of that section are:

> The court may set terms and conditions for staying or dismissing a claim or action under this section as the interests of justice may require, giving due regard to the rights of the parties to the claim or action. If a moving party violates a term or condition of a stay or dismissal, the court shall withdraw the order staying or dismissing the claim or action and proceed as if the order had never been issued. Notwithstanding any other law, the court shall have continuing jurisdiction for purposes of this subsection.

In their first issue, appellants complain about the condition for dismissal in which the MDL court provided that appellants would be required to stipulate to the *admissibility* of all evidence to which appellees ask them to stipulate. According to the MDL court, this condition prohibiting objection to the *admissibility* of "all evidence" was to be interpreted "in its broadest sense" and included other accidents as well as "expert testimony otherwise challengeable under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993)." The MDL court also provided in return jurisdiction provisions that, if appellants were to challenge the *admissibility* of any of the evidence, then that portion of the order pertaining to dismissal would be rescinded, and appellees would be allowed to refile their lawsuit in Tennessee. But, if Tennessee would not take it, then appellees could refile their lawsuit in Dallas County.

The effect of the MDL court's order is to allow appellees to introduce any and all evidence that they want to introduce unencumbered by the possibility that the evidence is objectionable and not admissible. Appellants are not allowed to object on any grounds. Otherwise, by merely raising a valid objection, they are back in Tennessee or back in Texas. Appellees argue that "the trial court was very careful to restrict its condition regarding admissibility to only that evidence produced in discovery here in the U.S." That claim notwithstanding, this is what the MDL court's order said: "Defendants shall stipulate to the *admissibility* of *all* evidence that the plaintiffs request be stipulated to" (emphasis added). We think that part of the court order belies the claim of appellees that the

3

MDL trial court's order was restricted carefully. In making their claim that this portion of the order was restricted, appellees point to that portion of the order that contains this language: "This includes all evidence which: (a) has been discovered up to this point; and (b) will be discovered after this date in the United States of America." That portion of the order does not limit the broader provision that allows appellees to request a stipulation from appellants regarding any and all evidence and requires appellants to agree to that broader stipulation or risk returning to court in the United States.

Appellees also argue that in *Dunsby v. Transocean, Inc.*, 329 F.Supp.2d 890 (S.D. Tex. 2004), a provision identical to the one in this case was imposed by the trial court. The trial court provided in that case: "Defendants shall *make available* for use in the Australian court proceeding any discovery materials produced in this action." 329 F.Supp.2d at 896 (emphasis added). Appellees' reliance upon *Dunsby* is misplaced. The *Dunsby* condition is hardly identical to the one in this case. *Making discovery available* is quite different from *stipulating to admissibility* upon the mere request of opposing parties.

Appellees also cite us to *Morales v. Ford Motor Co.*, 313 F.Supp.2d 672, 690 (S.D. Tex. 2004). In *Morales*, the trial court provided: "[T]he court's dismissal is conditioned on the Defendant's agreement to *allow the use of* all discovery obtained thus far in proceedings in the United States in the subsequent Venezuelan suit." 313 F.Supp.2d at 690 (emphasis added). Again, to *allow the use of* is not the same condition as the condition in this case that requires appellants to agree to admissibility of anything at any time when called upon to do so by appellee. It is noteworthy that no such restraints would be upon appellees.

We believe that the imposition of such a condition with its resultant effect neither is in the best interests of justice nor gives due regard to the rights of the parties. Furthermore, as appellants argue to this court, appellees have been placed in a much better position than they would have been had they originally filed their suit in Mexico where both Tennessee and Texas have said they should have filed it. The MDL court abused its discretion when it imposed this condition, and we sustain appellants' first issue.

In their second issue, appellants complain of the MDL court's condition that required them to pay for all costs relating to translation of any evidence that appellees might want to have translated. The order provided, in part, that "[d]efendants shall bear all costs associated with translating any and all evidence of [p]laintiffs' choosing into Spanish." All of these requested translations were to be completed before appellees filed their lawsuit in Mexico. The MDL court

4

provided that, if appellees did not "submit" any portion of the translated documents to the Mexican court, they would be required to reimburse appellants for the cost of those items translated but not submitted to the court, "subject to a10% margin of error." In its order, the MDL court gave an example to show how this worked: If appellees requested 1,000 pages but offered 800 pages, then appellees would be required to reimburse appellants for the cost of translating 100 pages. The MDL court also provided, in return jurisdiction provisions, that, if appellants were to refuse or otherwise object to appellees' request for translation "based on relevance, timing, quantity or other grounds," then, just as with objections to admissibility of evidence, that portion of the order pertaining to dismissal would be rescinded, and appellees would be allowed to refile their lawsuit in Tennessee. But, if Tennessee would not accept it, then appellees could refile their lawsuit in Dallas County.

Once again, appellants had no choice but to agree to translate anything and everything that appellees asked them to translate, and the translation was due to be accomplished before appellees filed the suit in Mexico. Appellees again direct us to *Morales*. There, the trial court imposed this condition: "[T]he court's dismissal is conditioned on the Defendant's agreement to bear any translation-related expenses concerning the testimony of English-speaking witnesses at trial." *Morales*, 313 F.Supp.2d at 689-90. That is a much narrower condition than that imposed in this case. As explicitly provided by the MDL court in its order in this case, appellants could not "refuse or otherwise object to Plaintiffs' request for translation, based on relevance, timing, quantity or other grounds." There are no similar restraints upon appellees.

The *Morales* court also referred to *Urena Taylor v. Daimler Chrysler Corp.*, 196 F.Supp.2d 428, 435 (E.D. Texas 2001). Appellees also cite us to that case. Although we are not directly addressing discovery issues in this part of the opinion, we do note that, in referring to discovery requests, the *Urena Taylor* court put forth the concept that a plaintiff's discovery requests must be reasonable. We see no reason that a request for translation of documents should not meet the test of reasonableness.

There is a difference in being required to pay for the translation expenses of English-speaking trial witnesses and in requiring the payment of translation expenses of anyone from anywhere that appellees wanted – relevant, reasonable, or not – even before the lawsuit was filed in Mexico. The only protection offered appellants is that the MDL court required appellees to pay for any translations they did not use (subject to a margin of error). At a minimum, before any document is translated, the request for that translation should be reasonable, and the document should at least pass the

relevancy test. *See id.*; *Seguros Comercial Americas S.A. de C.V. v. Am. President Lines, Ltd.*, 933 F.Supp. 1301 (S.D. Texas 1996).

We believe that the imposition of a condition such as the one regarding translation in this case, with its resultant effect, neither is in the best interests of justice nor gives due regard to the rights of the parties. Furthermore, as appellants argue to this court, appellees have been placed in a much better position than they would have been had they originally filed their suit in Mexico where both Tennessee and Texas have said they should have filed it. The MDL court abused its discretion when it imposed this condition, and we sustain appellants' second issue.[1]

In appellants' third issue, they address that part of the MDL court order in which it provided that appellants would pay for transporting "any and all witnesses of Plaintiffs' choosing" to Mexico. The MDL court provided for a reimbursement arrangement similar to the reimbursement arrangement in regard to translated documents. The MDL court also provided, in return jurisdiction provisions, that, if appellants were to refuse or otherwise object to appellees' request to transport any witnesses, then that portion of the order pertaining to dismissal would be rescinded, and the appellees would be allowed to refile their lawsuit in Tennessee. But, if Tennessee would not take it, then appellees could refile their lawsuit in Dallas County.

Under the MDL court's conditions, the appellees could tell appellants which witnesses they wanted, and appellants were obligated to transport them to Mexico. Appellants could neither raise objections to nor refuse to pay the cost for that transportation. Once again, appellees attempt to correlate the condition in this case with the condition in *Morales* wherein the trial court's order contained this provision: "[T]he court's order of dismissal is conditioned on the Defendant's agreement to make *its* witnesses and evidence available in the Venezuelan proceedings" (emphasis added). *Morales*, 313 F.Supp.2d at 689.

The *Morales* court refers to and the parties in this case cite to *Seguros*. In *Seguros*, the trial court conditioned dismissal on the obligation of the defendant to "make available in the Mexican proceedings all relevant documents and witnesses within its control." *Seguros*, 933 F.Supp. at 1315.

---

[1]The record shows that appellees had requested 3,300 documents prior to the time the order of dismissal was entered in this case. The record also shows that the cost of translation is 18 cents per word and that the average number of words per page is 300. Appellants argue that, if each document was six pages, the total cost of translation would exceed $1,000,000 at the time of the hearing. The MDL court acknowledged the magnitude of the cost of translation.

The *Seguros* court added the reasonable provision that the documents and witnesses be relevant as well as within the defendant's control.

There is a difference in making witnesses under one's control available in the home forum and making anyone available that the plaintiff wants to be made available with no opportunity to object allowed to appellants. We believe that the imposition of such a condition, with its resultant effect, neither is in the best interests of justice nor gives due regard to the rights of the parties. Furthermore, as appellants argue to this court, appellees have been placed in a much better position than they would have been had they originally filed their suit in Mexico where both Tennessee and Texas have said they should have filed it. The MDL court abused its discretion when it imposed this condition, and we sustain appellants' third issue.

The MDL court ordered that all parties were to "comply with the applicable procedural rules of the Mexican court regarding submission to jurisdiction (competence)." The court continued, "The parties will in good faith submit this case to the Mexican Court for the purpose of allowing that Court to determine if it has and will accept jurisdiction (competence)." In their fourth issue, appellants take issue with that portion of the MDL court's order that comes next: "[P]rovided, however, plaintiffs and their counsel shall not be required to sign any written agreement, contract, stipulation or other instrument proffered by defendants purporting to submit to the Mexican Court's jurisdiction (competence)." If, after good faith efforts have been made, the Mexican court were to determine that it was not competent to accept this case, then, in accordance with the MDL court's order, in return jurisdiction provisions, appellees could refile their lawsuit in Tennessee. If Tennessee again would not accept the case, the MDL court authorized appellees to return to Dallas County and refile their action there.

At first blush, any disagreement with this condition seems to be resolved by the requirement that all parties were to comply with any procedural rules and to act in good faith in presenting the jurisdictional (competence) question to the Mexican courts. Exempted from that condition, however, is any requirement that appellees sign anything that appellants produced relating to submission to Mexican jurisdiction (competence). In reality, the MDL court provided that appellees were not required to sign any document proffered by appellants purporting to submit to Mexican jurisdiction (competence). It appears from the record that one way in which a Mexican court can acquire jurisdiction (competence) is by agreement or consent. If that be true and if all parties are required by the MDL court to act in good faith in seeking to bring this case under the jurisdiction of the

Mexican courts, then appellees ought not to be exempt from executing a legitimate, proper document in which those ends are sought, regardless of its source. This is particularly bothersome in the face of appellees' lawyer's statement, "My clients are never going to sign a submission."

In *Morales*, the plaintiffs basically argued that, if they opted not to submit themselves to the jurisdiction of the Venezuelan courts, then that jurisdiction was "unavailable." In deciding whether to grant a motion to dismiss or stay under the doctrine of forum non conveniens, a court shall consider the availability of an alternate forum in which the cause might be tried. TEX. CIV. PRAC. & REM. CODE ANN. §71.051(b) (Vernon 2008). And, if unavailable because they opted not to submit to the jurisdiction, the plaintiffs argued a dismissal under the doctrine of forum non conveniens would be improper. The court disagreed and noted that "[t]he Plaintiffs . . . have confused their willingness to avail themselves of the Venezuelan forum for its availability." *Morales*, 313 F.Supp.2d at 675. To accept the plaintiffs' argument in *Morales* would, according to the court, amount to "an utter abrogation of the *forum non conveniens* doctrine." *Morales*, 313 F.Supp.2d at 676.

We believe that this restriction upon the requirement that all parties attempt in good faith to bring this matter under Mexican jurisdiction (competence), with its resultant effect, neither is in the best interests of justice nor gives due regard to the rights of the parties. The MDL court abused its discretion when it imposed this condition, and we sustain appellants' fourth issue.

Having sustained all of appellants' complaints, we reverse the order of the trial court and remand this cause for a reconsideration of those conditions for dismissal involved in this appeal. The trial court is instructed to set new conditions in accordance with this opinion and *Urena Taylor*, *Dunsby*, *Morales*, and *Seguros*.

JIM R. WRIGHT
CHIEF JUSTICE

December 3, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

8