IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JULY 8, 2003 Session

## IN RE: BRIDGESTONE/FIRESTONE and
## FORD MOTOR COMPANY TIRE LITIGATOIN

**Extraordinary Appeal from the Circuit Court for Davidson County**
**No. 01MD-2; 01MD-3      Thomas W. Brothers, Judge**

———————————

**No. M2002-02204-COA-R10-CV - Filed December 3, 2003**

———————————

This extraordinary appeal arises from the lower court's denial of Appellants' motion to dismiss under the doctrine *forum non conveniens.* The case is comprised of thirty-one lawsuits, based on automobile accidents in Mexico involving Ford and Firestone products, that are consolidated in Davidson County, Tennessee for pretrial purposes. Using the approach set forth by the Tennessee Supreme Court in *Zurick v. Inman*, the trial court found that dismissal of the case was not necessary. For the following reasons, we reverse the ruling of the lower court.

**Tenn. R. App. P. 10, Extraordinary Appeal; Judgment of the Circuit Court Reversed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and DON R. ASH, S.J., joined.

James F. Sanders, A. Scott Ross, Nashville, TN; Colin Smith, Charles Joern, Chicago, IL, for Appellant Firestone

Stephen A. Marcum, Huntsville, TN; Jonathan Cole, Nashville, TN, for Appellant Ford Motor Company

Steven A. Riley, Salvador M. Hernandez, Nashville, TN, for Appellant Bridgestone Corporation

Steve North, Madison, TN; Mary Parker, Nashville, TN, for Appellees

**OPINION**

**Facts and Procedural History**

The present matter is comprised of some thirty-one lawsuits arising from automobile accidents that occurred in Mexico. Each accident involved steel belted radial tires manufactured by Bridgestone/Firestone, Inc. ("Firestone") and installed on Ford Motor Company ("Ford") or General Motors[1] sport utility vehicles. The accidents occurred in at least eleven different states throughout Mexico, including Jalisco, Nayarit, San Luis Potosi, Mexico City, Guanajanto, Veracruz, Guerrero, Nuevo Leon, Sonora, Tabasco, and Aguascalientes. In each case, the vehicles and tires were purchased and serviced exclusively in Mexico; the medical treatment and the investigations occasioned by the accidents were conducted in Mexico; and all witnesses of the accidents reside in Mexico. The defendants, Ford and Firestone, are business concerns that operate on a global scale. Ford maintains its headquarters in Dearborn, Michigan, while Firestone keeps its principle place of business in Nashville, Tennessee.

The plaintiffs, all of whom are citizens and residents of Mexico, assert that defects in the Firestone tires, alone or in conjunction with an alleged propensity of Ford vehicles to roll over, caused the accidents. The plaintiffs assert claims for negligence, strict liability, and breach of the Tennessee Consumer Protection Act. They also assert a claim for civil conspiracy, alleging that Ford and Firestone conspired to conceal the defective nature of their products. The plaintiffs filed their various actions in Davidson County, which constitutes Firestone's principle place of business, and the cases were consolidated for pre-trial proceedings on May 21, 2001. During the course of these proceedings, Ford and Firestone moved for dismissal based upon the doctrine of *forum non conveniens*. They maintained that Mexico would provide a preferable forum in which to conduct the instant cases. The lower court denied the motions, making two determinative findings. First, the court found that Mexico does not provide a "truly adequate alternative forum that would allow the fair disposition of these cases." The court then found, in the alternative, that the defendants failed to demonstrate that the relevant public and private factors warrant dismissal of the cases.

Ford and Firestone then requested permission of the lower court to seek an interlocutory appeal, which the court denied. This Court thereafter granted the defendants' application for extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure.

**Issues**

Ford and Firestone raise the following issues, as we perceive them, for our review.

I.      Whether the trial court erred by inquiring into the "adequacy" of an alternative forum as part of its *forum non conveniens* analysis;

_____

[1]      General Motors is no longer a defendant in this matter.

-2-

II. Whether the trial court erred by denying Appellants' motion to dismiss under the doctrine of *forum non conveniens*.

**Standard of Review**

The application of *forum non conveniens* is a matter of discretion with the trial court. Our review on appeal is limited to whether there has been an abuse of discretion. *Zurick v. Inman*, 426 S.W.2d 767, 772 (Tenn. 1968). "Judicial discretion when used as a guide for judicial action 'means a sound discretion . . . a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.'" *Package Express Center, Inc. v. Snider Foods, Inc.*, 788 S.W.2d 561, 564 (Tenn. Ct. App. 1989) (quoting *Langnes v. Green*, 282 U.S. 531, 541 (1931)). In the context of *forum non conveniens*, an abuse of discretion arises when the lower court fails to review and balance the private and public factors that guide any consideration of the doctrine. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507-08 (1947); *Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 47-48 (1st Cir. 1990); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1334 (9th Cir. 1984); *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 (11th Cir. 1983); *Package Express Center, Inc. v. Snider Foods, Inc.*, 788 S.W.2d 561, 564-65 (Tenn. Ct. App. 1989); *Smith v. Priority Transportation, Inc.*, No. 02A01-9203-CV-00074, 1993 WL 29021 at *4 (Tenn. Ct. App. Feb. 9, 1993).

**Law and Analysis**

The seminal Tennessee case on *forum non conveniens* is *Zurick v. Inman*, 426 S.W.2d 767 (Tenn. 1968). In that case, the Tennessee Supreme Court set out a two-part analysis for determining whether to apply *forum non conveniens*. A court must first ensure that "there is at least one forum other than the forum chosen where the plaintiff may bring his cause of action." *Id*. at 771-72. If such a forum is available, the court must then consider a series of public and private factors that guide the court's decision on whether dismissal is appropriate. *Id*. at 772. These factors were initially set forth by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), and adopted by the Tennessee Supreme Court in *Zurick*. *Id*. The two issues on appeal focus on the lower court's treatment of each step of the *Zurick* analysis.

**I. Available Alternative Forum**

Ford and Firestone contend that the lower court erred when it considered the "adequacy" of Mexico as an alternative forum, because such an inquiry has never been part of the *Zurick* analysis. The Appellants maintain, instead, that *Zurick* only requires a court to inquire into the "availability" of an alternative forum. Ford and Firestone also argue that, should an adequacy requirement be upheld, the trial court erred by finding Mexico to be inadequate.
The lower court specifically ruled:

The first step in the analysis of a *forum non conveniens* dismissal is to determine whether there exists an adequate and available alternative forum for resolution of a dispute . . . The defendants have not convinced this Court that the courts in Mexico provide a truly adequate alternative forum that would allow the fair disposition of these cases.

We disagree with the lower court's characterization of the applicable analysis. The relevant inquiry encompasses the availability of an alternative forum, but not its adequacy.

We begin our discussion with the plain language of the *Zurick* decision. In that case, the Tennessee Supreme Court held that "[t]he doctrine [of *forum non conveniens*] presupposes there is at least one forum other than the forum chosen where the plaintiff may bring his cause of action, and it is necessary the trial court determine such other forum is *available*." *Id.* (emphasis added). The plain language of this holding contemplates the availability of an alternative forum, but makes no mention of adequacy. Thus, the plain language of *Zurick* does not support the lower court's use of an adequacy requirement.

In addition, no Tennessee court has previously used an adequacy requirement when applying or interpreting *Zurick*. Instead, courts have limited their inquiries to the availability of alternative fora. *See, e.g., Guardsmark, Inc. v. Borg-Warner Protective Services*, No. 2A01-9409-CH-00207, 1998 WL 959664 at *1 (Tenn. Ct. App. Nov. 4, 1998); *Shoney's Inc. v. Chic Can Enters., Ltd.*, 922 S.W.2d 530 (Tenn. Ct. App. 1995); *Cummings, Inc. v. H.I. Mayaguez, Inc.*, No. 01-A-01-9306-CH-00258, 1993 Tenn. App. LEXIS 643 at *1 (Tenn. Ct. App. Oct. 1, 1993); *Smith v. Priority Transp., Inc.*, No. 02A01-9203-CV-00074, 1993 WL 29021 at *1 (Tenn. Ct. App. Feb. 9, 1993); *Package Express Ctr., Inc. v. Snider Foods, Inc.*, 788 S.W.2d 561 (Tenn. Ct. App. 1989); *Bourland v. Bourland*, 1988 Tenn. App. LEXIS 481 at *1 (Tenn. Ct. App. July 28, 1988); *Chapman Chem. Co. v. Reichhold Chems., Inc.*, 1987 Tenn. App. LEXIS at *1 (Tenn. Ct. App. April 24, 1987); *Raja v. Soundranayagam*, 1984 Tenn. App. LEXIS 3432 at *1 (Tenn. Ct. App. Oct. 12, 1984). Nor can it be said that the analysis of availability in these cases implicitly takes into consideration the adequacy of the remedies offered by the alternative forum. Instead, the analysis typically focuses on whether the cause of action would be barred by the applicable statute of limitations in the other forum or whether the defendant would be amenable to service therein. *Package Express*, 788 S.W.2d at 563. Thus, a plaintiff's ability to bring suit is, by itself, determinative of the issue of availability. There is no need to consider the nature of remedies afforded by the alternative forum. In the present matter, the record indicates that both Ford and Firestone have consented to waive any jurisdictional defenses, including any applicable statutes of limitations, if plaintiffs file suit in Mexico. As such, the courts of Mexico provide an available alternative forum.

In sum, there is no Tennessee authority that supports the lower court's inclusion of an adequacy requirement in its *forum non conveniens* analysis, and the record indicates that the courts of Mexico are available to adjudicate the instant cases. We, therefore, reverse the holding of the lower court on this issue and turn our attention to the next step of the *Zurick* analysis.

## II. The *Gilbert* Factors

The next step of the *Zurick* analysis entails various private and public factors that must be considered by a court when determining whether to dismiss a case upon *forum non conveniens* grounds. These factors were adopted by the *Zurick* court from the United States Supreme Court's decision in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). The factors may be divided into two categories: those of private interest and those of public interest. If the court finds that the private interests of the litigants favor litigation in another forum, then dismissal is appropriate. *See Gilbert*, 330 U.S. at 508; *Zurick*, 426 S.W.2d at 772. If the private factors counsel against dismissal, then the court considers various factors involving public interests. If these factors weigh in favor of the moving party, then the court may dismiss the case. *See Gilbert*, 330 U.S. at 508; *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002); *Zurick*, 426 S.W.2d at 772.

The lower court found that the relevant factors do not favor dismissal of the instant cases. Ford and Firestone contend that the lower court erred in its conclusion. We will analyze the lower court's findings in the context of each set of factors.

### A. Private Interests

The private interests enumerated in *Gilbert*, and adopted by the Tennessee Supreme Court in *Zurick*, include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.

*Zurick*, 426 S.W.2d at 772 (quoting *Gilbert*, 330 U.S. at 508). The lower court's decision seems to rely in large part upon these private factors. This is evident from the court's finding that "[a]mong the more important factors are the cost of litigation and access to evidentiary proof," both of which were found by the court to favor a Tennessee forum. Specifically, the lower court found that the costs of translating technical documents to Spanish and the relative problems in obtaining witness testimony in either possible forum counseled against dismissal. We cannot say that this finding constitutes an abuse of discretion. The trials promise to be costly, time-consuming, and difficult for the litigants regardless of whether they are held in Tennessee or Mexico. The lower court was within its discretion to find that the private interests fail to support dismissal on *forum non conveniens* grounds.

### B. Public Factors

The public factors enumerated in *Gilbert* and adopted in Tennessee in the *Zurick* decision are as follows:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Zurick*, 426 S.W.2d at 772 (quoting *Gilbert*, 330 U.S. at 508). The lower court's decision seems to place less emphasis on these public factors than it did with the private interests. The court did address a few of the public interests in passing, however. Specifically, the lower court found that the application of foreign law, if necessary, would not present a formidable obstacle; that judicial resources would not be strained by trying these cases in Tennessee; and that the plaintiffs' allegations of conspiratorial activity in Davidson County provide a local interest that strongly supports trial in this forum. We find that the lower court failed to properly evaluate and balance the relevant public policy factors, which strongly counsel dismissal of the instant cases in favor of Mexico.

The lower court erred in three respects regarding the public interest factors. First, the court failed to give proper consideration to the difficulties posed by the application of Mexican law. The lower court merely stated that "the application of foreign law in these cases, if required, does not present such a formidable obstacle as to require dismissal." We disagree.

We note, as an initial matter, that Mexican law will almost certainly be the controlling substantive law in these cases. Tennessee choice-of-law principles were most recently updated in *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992). In that case, the Tennessee Supreme Court adopted the "most significant relationship" approach enumerated by the Restatement (Second) of Conflict of Laws. *Id*. at 54. According to this theory, the law of the jurisdiction where the injury or accident occurred will apply unless another jurisdiction has a more significant relationship to the litigation. *Id*. at 59. In the present matter, the accidents and injuries all occurred in Mexico. Thus, Mexican law will apply unless another jurisdiction has a more significant relationship to the litigation. Tennessee cannot be said to have a more significant relationship, nor can any other jurisdiction. Tennessee's only link to the litigation is Firestone's maintenance of its principal place of business in Davidson County and the conspiratorial activities that allegedly took place therein. Mexico has more numerous, and more significant, links to the instant cases. It is the site of the accidents, the residence of all plaintiffs, and the center of the relationships between all parties. Tennessee's tenuous links to the litigation are simply insufficient to overcome the default rule that Mexico, as the situs of the accidents at issue, will provide the applicable law.

We must now evaluate the difficulties that will arise from the application of Mexican law by Tennessee courts. The relevant rule in a *forum non conveniens* analysis is that "the application of

the laws of another state becomes a factor when it is shown that the laws of the foreign state, applicable to the case, are so materially different from our own that their application would present difficulty to the court." *Zurick*, 426 S.W.2d at 774; *Smith v. Priority Transp., Inc.*, No. 02A01-9203-CV-00074, 1993 WL 29021 at *4 (Tenn. Ct. App. Feb. 9, 1993). There can be little doubt that the laws of Mexico are materially different from those of Tennessee. Mexico follows a civil law approach, rather than our own common law one. This means that all disputes will be decided by reference to specific written statutes, rather than common law doctrines, which often admit of more flexible interpretation. If Tennessee courts were to try the instant cases, they would be forced, as an initial matter, to obtain reliable English translations of the relevant Mexican statutes, which are written in Spanish. The interpretation of unfamiliar statutes is difficult enough without the added burden of deciphering what the statutes state on their very face. The translation process would likely rely upon competing expert affidavits and testimony proffered by the parties. Other courts have recognized the undesirability of having to engage in a battle of experts just to determine the plain language of the applicable law. *Seguros Commercial Americas S.A. v. Am. President Lines Ltd.*, 933 F. Supp. 1301, 1311 (S.D. Tex. 1996). The problem is also exacerbated in the instant matter by the sheer multiplicity of statutes that Tennessee courts will be forced to interpret. In Mexico, substantive legal issues regarding personal injury cases are controlled by the law of the state where the tortious acts take place, and each state has a separate civil code. In the present cases, the record indicates that the accidents occurred in at least eleven different Mexican states. It follows, then, that at least eleven different sources of statutory authority would have to be interpreted by Tennessee courts. This promises to be an arduous and time-consuming process in light of the protracted battle of experts that has already occurred during pretrial proceedings over fundamental aspects of Mexican civil procedure. Under such circumstances, it is better to allow the foreign jurisdiction, well-versed in its own law, to try the matter. *See Ford v. Exxon*, 319 F.3d 1302 (11th Cir. 2003); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424 (11th Cir. 1996); *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608 (6th Cir. 1984); *Seguros*, 933 F. Supp. at 1314.

The lower court also erred when it failed to consider the burden posed by jury duty upon the citizens of Davidson County. As already stated, the trial of these cases will involve the civil codes of at least eleven different Mexican states. This means that the cases would not likely be consolidated into a single action for trial, given the substantial likelihood of jury confusion arising from the multiplicity of statutory schemes. It follows that multiple juries would have to be empaneled, increasing the burden upon the community of Davidson County. This burden does not seem warranted, considering that Davidson County's only link to the litigation is Firestone's alleged conspiratorial activity. By contrast, Mexico is linked to the current litigation by almost every critical event at issue. As such, the public interest factor regarding jury duty would seem to favor dismissal.

Finally, and perhaps most telling, the trial court erred when it failed to consider the overwhelming interests Mexico has in adjudicating these cases. The lower court's only allusion to the local interest factor states that "there stand allegations of conspiratorial activities that purportedly occurred in Davidson County. This factor strongly supports trial in this forum." The trial court simply fails to balance this interest against the interests of Mexico.

It is a well settled principle of *forum non conveniens* that there is "a local interest in having localized controversies decided at home." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947); *Zurick v. Inman*, 426 S.W.2d 767, 772 (Tenn. 1968). In the present matter, all the deceased were from Mexico; all the plaintiffs are from Mexico; the cars and tires at issue were purchased in Mexico; the cars and tires at issue were serviced and maintained in Mexico; the accidents all occurred in Mexico; and Mexican law will govern all substantive issues. In short, the present litigation is of primary local interest to Mexico, rather than Tennessee. The plaintiffs' allegations of a conspiracy involving Firestone are not sufficient to counterbalance Mexico's interest, as a sovereign nation, in deciding controversies that involve its citizens and occur within its borders.

We note that the lower court's analysis of the various *Zurick* factors seems to be affected by its view that the remedies and procedures afforded by Mexico are somehow unfair or unsatisfactory to its citizens. We are reminded of the Fifth Circuit's recent admonition regarding such a view:

> [I]n making this policy choice [regarding remedies and procedures], the Mexican government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values . . . It would be inappropriate-even patronizing-for us to denounce this legitimate policy choice by holding that Mexico provides an inadequate forum for Mexican tort victims . . . In short, we see no warrant for us, a United States court, to replace the policy preference of the Mexican government with our own view of what is a good policy for the citizens of Mexico.

*Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 381-82 (5th Cir. 2002). Mexico, as a sovereign nation, has an interest not only in adjudicating controversies of local interest, but also in determining the rights and remedies that will necessarily provide a framework for such an adjudication.

In sum, we find that the lower court abused its discretion by improperly considering the adequacy of Mexico as an alternative forum and by failing to properly consider and balance all the relevant *Zurick* factors, especially those dealing with public interests. As such, we reverse the ruling of the lower court.

## Conclusion

For the foregoing reasons, we reverse the judgment of the lower court and dismiss the case. Costs on appeal are taxed to Appellees, for which execution may issue if necessary.

ALAN E. HIGHERS, JUDGE