IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 16, 2005 Session

## MARIE SOLEDAD TORRICO (MORALES) v. DAVID RANDAL SMITHSON

**Appeal from the Juvenile Court for Wilson County**
**No. 02-JWC 119     Robert Hamilton, Judge**

_____

**No. M2004-01924-COA-R3-JV - Filed February 13, 2006**

_____

David Randal Smithson ("Father"), a Tennessee resident, is a pilot for a major airline and his job duties require him to fly to Bolivia, South America. During one of these trips to Bolivia, Father became romantically involved with Marie Soledad Torrico (Morales) ("Mother"), a citizen and resident of Bolivia. In April of 2001, Mother gave birth in Bolivia to the parties' son, who is a citizen and resident of Bolivia and has been since his birth. After obtaining a temporary Visa authorizing her to come to the United States, Mother filed this paternity action in the Wilson County Juvenile Court. Based on DNA test results, the Juvenile Court enter an Order establishing Father as the biological father of the child. The Juvenile Court later entered an order requiring Father to pay child support based on the Tennessee Child Support Guidelines. Father appeals claiming, among other things, that the Juvenile Court lacked subject matter jurisdiction to enter an order requiring him to pay child support when the child was conceived in Bolivia, born in Bolivia, and when both Mother and the child are citizens and residents of Bolivia. We hold that the Juvenile Court had subject matter jurisdiction over the proceedings but erred in applying Tennessee law. The judgment of the Juvenile Court is, therefore, vacated and this case is remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Juvenile Court Vacated; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Melanie R. Bean, Lebanon, Tennessee, for the Appellant David Randal Smithson.

Kirk L. Clements, Goodlettsville, Tennessee, for the Appellee Marie Soledad Torrico (Morales).

# OPINION

## Background

The facts relevant to this appeal are, for the most part, undisputed. Father is a United States citizen and a Tennessee resident. Father is a pilot for a major airline and his job duties require him to fly to Bolivia. Mother is a citizen of Bolivia. During one of Father's trips to Bolivia, he and Mother had sexual relations which resulted in the birth of the parties' son on April 18, 2001. After Mother allegedly had difficulty in obtaining any child support from Father, Mother obtained a tourist Visa which authorized her to move temporarily to Tennessee allowing her to institute these proceedings. On August 12, 2002, Mother temporarily moved to Tennessee, and four days later she filed this lawsuit seeking to establish Father's paternity of the child and set child support payments. DNA testing was conducted which proved that Father was the biological father of the child, and the child's parentage is not directly at issue in this appeal.

Because a tourist Visa does not authorize Mother to work, she has not worked since temporarily relocating to Tennessee approximately three and one-half years ago and presumably has been supporting herself, at least in part, on Father's child support payments. The minor child was conceived in Bolivia, born in Bolivia on April 18, 2001, and has continued to reside in Bolivia since his birth almost five years ago. The child has been in the physical care and custody of Mother's parents after Mother temporarily moved to Tennessee in August of 2002. As noted by the Juvenile Court, "the minor child has not resided in the household of [Mother] … since her relocation to the United States on or about August 12, 2002."

Throughout the course of these proceedings, Father has contested the Juvenile Court's subject matter jurisdiction and has claimed that this lawsuit should have been filed in the Bolivian courts. Father also has sought to have this litigation dismissed pursuant to the doctrine of *forum non-conveniens*. Father has instituted legal proceedings in Bolivia, thereby submitting himself to the personal jurisdiction of the Bolivian court. Other arguments advanced by Father in the Juvenile Court include his claim that any monthly child support obligation should be based on Bolivian law as opposed to Tennessee law, and that Mother was not the proper person to whom child support payments should be paid since the child had not been in her physical care and custody for several years.

The Juvenile Court concluded that it had jurisdiction over the proceedings pursuant to Tenn. Code Ann. § 36-2-307. In November of 2002, Father was ordered to begin making temporary child support payments. In July of 2003, and in reliance on the results of a DNA test, the Juvenile Court entered an order finding Father to be the child's biological father. In July of 2004, the Juvenile Court entered a Final Order requiring Father to pay $2,266.43 in expenses and medical bills related to the child's birth. Father also was ordered to pay Mother child support in the amount of $1,088 per month. The Juvenile Court also determined that Father was in arrears on child support payments in the amount of $18,000, and entered judgment accordingly.

Father appeals claiming the Juvenile Court erred when it concluded it had subject matter jurisdiction, that the proceedings should not be dismissed based on the doctrine of *forum non-conveniens*, and in its choice of law by applying Tennessee's rather than Bolivia's child support law. Father also claims that the Juvenile Court erred when it required him to pay child support to Mother when the child has not been in her physical care and custody for several years. Father's final issue is an alternative argument that the Juvenile Court erred in determining the amount of his child support arrearages.

## Discussion

The factual findings of the Juvenile Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

As noted, the Juvenile Court concluded that is had jurisdiction pursuant to Tenn. Code Ann. § 36-2-307, which is part of the paternity and legitimation statutes. In relevant part, this statutory section provides as follows:

> **§ 36-2-307. Jurisdiction – Venue. –** (a)(1) The juvenile court or any trial court with general jurisdiction shall have jurisdiction of an action brought under this chapter; …
>
> (2) The court shall have statewide jurisdiction over the parties involved in the case.
>
> (b) Any minimum contact relevant to a child's being born out of wedlock that meets constitutional standards shall be sufficient to establish the jurisdiction of the courts of Tennessee over the parents for an action under this chapter. Any conduct in Tennessee that results in conception of a child born out of wedlock shall be deemed sufficient contact to submit the parents to the jurisdiction of the courts of Tennessee for action under this chapter.

If a trial court has jurisdiction pursuant to Tenn. Code Ann. § 36-2-307, then upon establishing the parentage of the child, Tenn. Code Ann. § 36-2-311(a)(11) requires the trial court to make a determination regarding child support. More specifically, the trial court is required to make a "[d]etermination of child support pursuant to chapter 5 of this title."

As recently noted by our Supreme Court in *Osborn v. Marr*, 127 S.W.3d 737 (Tenn. 2004):

> Subject matter jurisdiction involves a court's lawful authority to adjudicate a particular controversy. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). Tennessee's courts derive subject matter jurisdiction from the state constitution or from legislative acts. *See id.*; *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977). Courts may not exercise jurisdictional powers that have not been conferred on them directly or by necessary implication. *See First Am. Trust Co. v. Franklin-Murray Dev. Co.*, 59 S.W.3d 135, 140 (Tenn. Ct. App. 2001); *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999).

*Osborn*, 127 S.W.3d at 739.

The typical child support case on appeal to this Court involves a child and parents who are all Tennessee residents and, as such, the subject matter jurisdiction of a Tennessee court to enter a child support order is not an issue. Issues pertaining to jurisdiction and venue usually arise when the parents live in different states or different countries. Obviously, the State of Tennessee has a very strong interest in ensuring that its minor residents are properly supported. Every other state has an equally compelling interest with regard to that state's minor residents, as do foreign countries.

In response to problems that can arise when a parent and the child(ren) live in one state, and the obligor parent in a different state, most if not all states have enacted a Uniform Interstate Family Support Act ("UIFSA"). Tennessee's UIFSA is codified at Tenn. Code Ann. § 36-5-2001 *et seq*. In very general terms, the UIFSA sets forth a mechanism by which support orders from other states can be registered and enforced in Tennessee when the obligor parent lives in Tennessee. Likewise, Tennessee support orders are accorded the same deference when the child and obligee parent are Tennessee residents, but the obligor parent lives in another state. The reciprocity between states set forth in the UIFSA even applies to foreign countries in certain circumstances because the statute defines a "state" to include a "foreign jurisdiction that has enacted a law or establishes procedures for issuance and enforcement of support orders which are substantially similar" to Tennessee's Act. Tenn. Code Ann. § 36-5-2101(19)(B). Bolivia, however, is not a reciprocating foreign jurisdiction.[1] Because Bolivia is not a reciprocating foreign jurisdiction, the provisions of the UIFSA simply do not apply.

Tenn. Code Ann. § 36-2-307 specifically grants juvenile courts subject matter jurisdiction over paternity cases. The paternity statute then directs the juvenile court to enter an order for child support. Tenn. Code Ann. § 36-2-311(a)(11)(A). An obvious intent of the paternity statute is to address situations involving a mother and child who are Tennessee residents. The

---

[1] As of December 2, 2002, reciprocating foreign jurisdictions included Australia, various Canadian Provinces, the Czech Republic, Ireland, the Netherlands, Norway, Poland, Portugal, and the Slovak Republic. *See* 67 Fed. Reg. No. 231 at p. 71605 (Dec. 2, 2002).

applicability of § 36-2-311(a)(11)(A) to the facts of this case is not as clear cut since Mother and the child are citizens and residents of Bolivia. However, there is no doubt that Father's Tennessee residence confers *in personam* jurisdiction on the Tennessee Juvenile Court, and Mother certainly has submitted herself to the personal jurisdiction of the Juvenile Court. The dispositive question on the jurisdictional issue is whether Tenn. Code Ann. § 36-2-311(a)(11) confers subject matter jurisdiction on the Juvenile Court to enter a child support order when Mother and child are Bolivian residents. After considering all pertinent factors, we conclude, under the particular facts presented in this case, that the Juvenile Court did have subject matter jurisdiction to enter a child support order. There is no serious dispute but that the Juvenile Court had *in personam* jurisdiction over Father as a Tennessee resident. The language of Tenn. Code Ann. §§ 36-2-307 and 36-2-311(a)(11) reflects the Tennessee Legislature's clear intent to confer subject matter jurisdiction on the Juvenile Court over child support in such a paternity case as is now before us.

Our having decided that the Juvenile Court did have subject matter jurisdiction, the next issue is whether it erred in exercising that jurisdiction considering the doctrine of *forum non-conveniens*. The doctrine of *forum non-conveniens* was discussed at length in *In re: Bridgestone/Firestone and Ford Motor Company Tire Litigation*, 138 S.W.3d 202 (Tenn. Ct. App. 2003). In that case, this Court stated:

> The application of *forum non conveniens* is a matter of discretion with the trial court. Our review on appeal is limited to whether there has been an abuse of discretion. *Zurick v. Inman*, 221 Tenn. 393, 426 S.W.2d 767, 772 (1968).… In the context of *forum non conveniens*, an abuse of discretion arises when the lower court fails to review and balance the private and public factors that guide any consideration of the doctrine. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981) ….
>
> The seminal Tennessee case on *forum non conveniens* is *Zurick v. Inman*, 221 Tenn. 393, 426 S.W.2d 767 (1968). In that case, the Tennessee Supreme Court set out a two-part analysis for determining whether to apply *forum non conveniens*. A court must first ensure that "there is at least one forum other than the forum chosen where the plaintiff may bring his cause of action." *Id.* at 771-72. If such a forum is available, the court must then consider a series of public and private factors that guide the court's decision on whether dismissal is appropriate. *Id.* at 772.
>
> * * *
>
> The factors [to consider] may be divided into two categories: those of private interest and those of public interest. If the court finds that the private interests of the litigants favor litigation in another forum,

-5-

then dismissal is appropriate. *See Gilbert*, 330 U.S. at 508, 67 S. Ct. 839; *Zurick*, 426 S.W.2d at 772. If the private factors counsel against dismissal, then the court considers various factors involving public interests. If these factors weigh in favor of the moving party, then the court may dismiss the case. *See Gilbert*, 330 U.S. at 508, 67 S. Ct. 839; *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002); *Zurick*, 426 S.W.2d at 772.

*Bridgestone/Firestone*, 138 S.W.3d at 205, 207.

The private factors which would be relevant to this case include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) and the cost of obtaining attendance of willing witnesses; (4) the enforceability of a judgment if obtained; and (5) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Bridgestone/Firestone*, 138 S.W.3d at 207 (citations omitted). Public factors include a local interest in having local controversies decided at home and having a case tried in the forum that is "at home" with the law that is to be applied. *Id.* at 207-208.

Admittedly, the doctrine of *forum non-conveniens* is not typically applied in child support cases and is more suited for tort cases. The reason for this is that the child support statutes usually include provisions addressing jurisdiction, venue, and at times choice of law. These provisions often-times obviate the need for a *forum non-conveniens* analysis. However, since there does not appear to be any statute providing such guidance under the facts of this case, we will undertake to examine the relevant *forum non-conveniens* factors.

With regard to the private factors, the majority of the proof regarding child support would be derived from Mother and Father so this factor does not favor one forum over the other. There is no proof in the record regarding compulsory process to compel attendance of unwilling witnesses. Certainly, to the extent that an "unwilling" witness lives in Bolivia, then the Tennessee Court will be unable to compel attendance. The same could be said for a Bolivian court's ability to obtain attendance of a United States citizen. There is no proof in the record regarding the likelihood of Mother being able to enforce a Bolivian judgment, but it is doubtful that it would be easier to enforce a Bolivian judgment against Father than it would be a Tennessee judgment. As noted, public factors include a local interest in having local controversies decided at home and having a case tried in the forum that is "at home" with the law that is to be applied. The public factors here tend to support Bolivia as the proper forum since Mother and the child are residents of that country.

Given the particular facts of this case, we have concluded that the Juvenile Court had subject matter jurisdiction to enter a child support order. However, as the child was conceived in Bolivia, born in Bolivia, and has lived in Bolivia his entire life along with the fact that Mother and the child are citizens of Bolivia, it seems clear that Bolivian law governs Father's child support obligations given Bolivia's paramount interest in ensuring the minor child at issue in this case is adequately supported.

Because the Juvenile Court's judgment was based on the Tennessee Child Support Guidelines, the judgment of the Juvenile Court must be vacated. On remand, the parties are instructed to forthwith provide the Juvenile Court with the applicable Bolivian child support laws and the Juvenile Court then is instructed to calculate Father's child support obligation based on that country's law. If the parties are unable to provide the Juvenile Court with the applicable Bolivian law sufficient for the Juvenile Court to determine what Father's child support obligations are under Bolivian law, then the Juvenile Court is instructed to dismiss this case pursuant to the doctrine of *forum non-conveniens*, thereby allowing the Bolivian courts to make the necessary determination given those courts are "at home" with Bolivian law. All remaining issues are pretermitted.

## **Conclusion**

The judgment of the Juvenile Court is vacated and this cause is remanded to the Juvenile Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed one-half to the Appellant David Randal Smithson and his surety, and one-half to the Appellee Marie Soledad Torrico (Morales).

_____
D. MICHAEL SWINEY, JUDGE