# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned March 19, 2013

## IN RE: BRIDGESTONE CORPORATION, ET AL.

## No. 06-MD1

### Appeal from the Circuit Court for Davidson County
### (Nos. 05C1552, 05C1555, 05C1556, 05C1560, 05C1561, 05C1570)
### Thomas W. Brothers, Judge

---

### No. M2013-00637-COA-10B-CV - Filed April 26, 2013

---

This appeal arises out of the second consolidated case to be tried in a number of related cases involving accidents that occurred in Mexico and allegedly were caused by defective tires and/or vehicles. The trial judge denied the plaintiffs' motion that he recuse himself. The motion was based upon allegations of the appearance of bias or prejudice. Having reviewed the filings in this appeal under the required de novo standard of review, we affirm the trial court's denial of the motion.

### Tenn. R. App. P. 3 Appeal as of Right/Tenn. Sup. Ct. R. 10B; Judgment of the Circuit Court Affirmed

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Steve North, Madison, Tennessee; Richard L. Denney, Lydia JoAnn Barrett, Norman, Oklahoma; Robert L. Langdon, J. Kent Emison, Lexington, Missouri, *counsel for the appellants*, Nos. 05C-1552 (Torres), 05C-1555 (Rodriguez), 05C-1556 (Santin), 05C-1560 (Hernandez); Douglas S. Johnston, Jr., Nashville, Tennessee, *counsel for the appellants*, Nos. 05C-1561 (Rivera Ruiz), 05C-1570 (Crispo Valdiva).

Stephen A. Marcum, Huntsville, Tennessee; Gregory G. Garre, Roman Martinez, Washington, DC, for the appellee, Ford Motor Company.

A. Scott Ross, James F. Sanders, Nashville, Tennessee; Marc R. Brousseau, Denver, Colorado; Scott G. Edwards, Dallas, Texas; Craig A. Morgan, Austin, Texas; Warren E. Platt, Phoenix, Arizona, for the appellees, Bridgestone Corporation and Bridgestone/Firestone

North American Tire, LLC.

## OPINION

The appellants appeal from the denial by the trial judge of a motion to recuse himself. Some background about the cases in which the motion was filed is in order. This appeal arises out of one of twelve cases, each of which is a consolidation of a number of other cases. The cases were originally filed in 2001 and arise from injury accidents allegedly related to tire and/or vehicle failures, all taking place in Mexico.

Since the filing of the cases, the same trial judge has been assigned to all of them. There have already been at least two appeals involving procedural and venue issues. The trial judge has, through a series of orders, organized the progress of the cases, including consolidating them into fourteen cases and setting the cases for trial on a schedule that began in January of this year and will extend into 2015.

The first consolidated case to be tried went to trial in January of 2013. The next case in line to be tried is the case that is the subject of this appeal. It involves a number of separate plaintiffs in related cases. The first case had been tried by a jury and verdict entered before the motion for recusal was filed in this case. The plaintiffs in six of those individual cases filed the motion and are the appellants herein.

## I. APPEALS UNDER TENN. S. CT. R. 10B

Appeals from orders denying motions to recuse are governed by Tenn. S. Ct. R. 10B. Pursuant to §2.01of that rule, parties are entitled to an "accelerated interlocutory appeal as of right" from an order denying a motion for disqualification or recusal. The appeal is effected by filing a "petition for recusal appeal." Tenn. S. Ct. R. 10B, §2.02. If this court, based on the petition and supporting documents, determines that no answer is needed, we may act summarily on the appeal. Tenn. S. Ct. R. 10B, §2.05. Otherwise, this court may order an answer and may also order further briefing by the parties. In addition, Tenn. S. Ct. R. 10B, §2.06 grants this court the discretion to decide the appeal without oral argument.

We have granted appellees' motion to file a response to the petition for recusal appeal and also granted appellants' motion to file a reply to that response. Having reviewed the filings and supporting documents, we find oral argument unnecessary.

The only issue before this court in an appeal under Tenn. S. Ct. R. 10B is whether the trial court erred in denying the motion for recusal. We review the trial court's recusal

decision under a de novo standard of review.  Tenn. S. Ct. R. 10B, §2.06.[1]

## II.  GROUNDS FOR RECUSAL

The plaintiffs' motion for recusal alleges as grounds actual bias and prejudice; the appearance of partiality that creates a "reasonable basis for questioning the judge's impartiality;" and the appearance of impropriety.

The importance of an impartial and unbiased court cannot be overstated.  As the Tennessee Supreme Court has explained:

> Litigants, as the courts have often said, are entitled to the cold neutrality of an impartial court.  *Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998).  Thus, one of the core tenets of our jurisprudence is that litigants have a right to have their cases heard by fair and impartial judges. *Id.* at 228. Indeed, it goes without saying that a trial before a biased or prejudiced fact finder is a denial of due process.  *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998).  Accordingly, judges must conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary and shall not be swayed by partisan interests, public clamor, or fear of criticism.  Tenn. Sup. Ct. R. 10, Cannon 2(A), 3(B)(2).

*Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001).  "If the public is to maintain confidence in the judiciary, it is required that cases be tried by unprejudiced and unbiased judges."  *Smith v. State*, 357 S.W.3d 322, 340 (Tenn. 2011) (quoting *State v. Rimmer*, 250 S.W.3d 12, 37 (Tenn. 2008)).

In addition to the essential lack of actual bias, "it is of immense importance, not only that justice be administered . . . but that [the public] shall have no sound reason for supposing that it is not administered."  *Davis*, 38 S.W.3d at 564 (citing *In re Cameron*, 151 S. W. 64, 76 (1912)).  "[T]he preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial."  *State v. Reid*, 213 S.W.3d 792, 815 (Tenn. 2006) (quoting *Kinard v. Kinard*, 986 S.W.2d 220,

---

[1]Prior to the adoption of Tenn. S. Ct. R. 10B, appellate courts reviewed recusal decisions under an abuse of discretion standard.  *State v. Hester*, 324 S.W.3d 1, 72-73 (Tenn. 2010); *Bailey v. Blount County Bd of Educ.,* 303 S.W.3d 216, 239-40*; State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995) ("A motion for recusal based upon the alleged bias or prejudice of the trial judge addresses itself to the sound discretion of the trial court and will not be reversed on appeal unless clear abuse appears on the face of the record.")

228 (Tenn. Ct. App. 1998)).

"It is the appearance that often undermines or resurrects faith in the system. To promote public confidence in the fairness of the system and to preserve the system's integrity in the eyes of the litigants and the public, 'justice must satisfy the appearance of justice.'"

*Smith*, 357 S.W.3d at 340 (quoting *State v. Lynn*, 924 S.W.2d 892, 898 (Tenn. 1996) (further quotation omitted).

The plaintiffs rely on Rule 2.11 of the Rules of Judicial Conduct, which provides:

(A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or party's lawyer, or personal knowledge of facts that are in dispute in the proceedings.[2]

The question of recusal on the basis of bias involves two inquiries. The first is whether the judge has actual bias; the second is whether his or her impartiality might reasonably be questioned, *i.e.*, whether there may be an appearance of bias even though no actual bias exists. The public's confidence in the judiciary requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial.

Therefore, a trial judge should grant a recusal motion not only when he or she has any doubt as to his or her ability to preside impartially in the case, *i.e.*, where actual bias is alleged, but also when "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Hester*, 324 S.W.3d at 73; (quoting *Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009)).

Thus, even when a judge believes that he or she can hear a case fairly and impartially, the judge should grant the motion to recuse if the judge's impartiality might reasonably be questioned. Tenn. Sup.Ct. R. 10, R. 2.11(A); *Bailey*, 280 S.W.3d at 805. The test is ultimately an objective one since the appearance of bias is as injurious to the integrity of the judicial system as actual bias. *Smith*, 357 S.W.3d at 341; *Davis*, 38 S.W.3d at 565.

---

[2]Rule 2.11(A) lists other specific situations which create questions regarding the judge's ability to be impartial, including defined relationships to the parties or counsel on the part of the judge or the judge's family. None of those situations is alleged to exist here.

### III. PRIOR RELATIONSHIP AND RULINGS

In the appeal before us, the plaintiffs' allegations of bias are based upon three separate circumstances. The first is a prior relationship between the trial judge and the attorneys for a defendant. The second allegation is, more or less, an argument that the judge's rulings indicate a bias against the plaintiffs. Essentially, the plaintiffs's counsel assert the rulings are so unreasonable that there can be no other explanation for them. We will address these two factual bases first.

The plaintiffs assert that the trial judge should have recused himself because in the past he had been a client of the firm which represents one of the defendants, and that he should have disclosed this past relationship early in the proceedings. The plaintiffs allege that a lawyer in the firm of Neal & Harwell, the firm representing Bridgestone in the case before us, had represented the trial judge in federal court. The plaintiffs allege that the lawyer first entered an appearance on behalf of the trial judge with the federal court on August 25, 1992. Neal & Harwell withdrew from that representation in October or November of 1992.

In accordance with Tenn. S. Ct. R. 10B, §1.03, the trial judge filed a thorough memorandum opinion detailing the grounds for his denial of the motion for recusal. In addressing the allegation arising from a prior attorney-client relationship with a defendant's counsel, the trial judge stated:

> The prior representation was for a limited time at the inception of a proceeding. The association was terminated over twenty years ago. There is no possibility of any continuing benefit from the prior relationship. There is no personal or social relationship between myself and members of the law firm of Neal & Harwell different from my relationship with other lawyers.

The trial court relied upon this court's holding in *Young v. Young*, 971 S.W.2d 386, 390 (Tenn. Ct. App. 1997). In that opinion, this court relied upon Judicial Ethics Opinion No. 94-2. In *Young*, the trial judge had been represented ten years earlier by the attorney who was representing one of the parties in a divorce case pending before the judge. We held that the judge was not required to recuse himself, in part because the attorney had not represented the judge in the ten years since that one case.

The trial judge also relied upon the ethics opinion cited in *Young*, and he attached that opinion to his order. The opinion of the Judicial Ethics Committee stated, in pertinent part:

> There is no canon that explicitly requires recusal under the facts related by the judge. If recusal is mandated, it is because the prior attorney-client relationship

of the attorney and the judge could create an appearance of impropriety (Canon 2) or reasonably call into question the judge's impartiality (Canon 3C).

Either Canon 2 or 3C would require a judge to recuse him/herself for a time from cases involving an attorney who then represents, or has recently represented, the judge. How remote in time the representation must be before the need for recusal dissipates, or for how long the need for recusal persists, must be determined on a case-by-case basis. For example, the nature of the lawyer's representation of the judge, and the duration of the representation, would be relevant considerations. Certainly the passage of ten years after an uncontested divorce, with no further representation during that time, completely obviates the need for recusal.

Absent any factors other than the single episode of representation in an uncontested divorce ten years ago, the judge's impartiality could not *reasonably* be questioned under Canon 3C. Similarly, the "appearance of impropriety" of Canon 2 also must be measured by a standard of reasonableness; a decade-old representation of the judge by a particular lawyer should not create in the mind of a *reasonable* person the appearance of impropriety when that lawyer appears before the judge.

We agree with the reasoning in this Ethics Opinion, the *Young* opinion, and the trial court's application of relevant legal principles. Accordingly, we are not of the opinion that the trial judge should have recused himself on the basis of a prior representation of limited duration and in the more distant past.

In order to reduce the amount of time that passed after the representation, the plaintiffs also allege that the first of the many cases involving accidents in Mexico was filed in October 2000 and assigned to the Sixth Circuit Court. Apparently, the clerk's office assigned the first case to that court in 2001. Later, all the approximately 30 similar cases that had been filed were also assigned to that court. Plaintiffs assert that the trial judge should have disclosed his past attorney-client relationship with defendant's counsel at the time the first case was filed. In support of this assertion, plaintiffs rely on RJC 2.11(C), which sets out a procedure that may be used to disclose conflicts or other situations that may make the judge "subject to disqualification" under the Rule. The procedure then allows the parties, after disclosure, to consider whether to waive the disqualification.

However, it must be pointed out that all the cases were dismissed in 2003 or 2004 pursuant to this court's reversal of the trial court's denial of defendants' motion to dismiss. *In re Bridgestone/Firestone and Ford Motor Company Tire Litigation*, 138 S.W.3d 202

(Tenn. Ct. App. 2003). After pursuing suits brought in Mexico, the plaintiffs refiled here.

At the time the existing cases were refiled in 2003 or 2004, there was no basis for disqualification of the trial judge based upon the brief representation of him by Neal & Harwell, for the same reasons we found earlier that his disqualification on that ground was not required. We find that judge's impartiality could not reasonably be questioned based on that representation, whether the question was raised in 2001, 2004, or 2013. Accordingly, no duty to disclose existed and the judge was not "subject to disqualification" at the earlier time.

The plaintiffs also assert that some rulings by the trial judge demonstrate his bias or prejudice. The judge has made only one recent ruling in the case before us, the case that was to be the second case tried. That is the ruling that the plaintiffs cite as suggesting the appearance of bias, partly because it was rendered shortly after the plaintiffs' request that the trial judge recuse himself. The ruling in question set out how the court was going to apply Mexican law in this case. Plaintiffs assert that the ruling effectively capped damages in the case at about $110,000. It seems to us that that ruling was not inconsistent with prior rulings by the trial court regarding application of Mexican law. In addition, we have reviewed the order in question, and we find the trial court carefully and thoroughly explained his decisions and their effects, including translation and interpretation of statutes in effect in the particular provinces involved.

The trial judge granted plaintiffs a Tenn. R. App. P. 9 Interlocutory Appeal. This court has also granted the appeal. Thus, we will in due course review the merits of the trial court's ruling. However, whether we eventually agree with the trial judge or not has no relevance to any alleged bias. What the plaintiffs actually complain of is the trial court's refusal to grant a stay pending the Rule 9 appeal when the trial was set to begin in less than two weeks.[3] The plaintiffs also cite as prejudice the trial judge's suggestion that counsel may have a difficult ethical decision to make since proceeding to trial would likely cost their clients more than could be recovered.

Generally, the terms "bias" and "prejudice" refer to a state of mind or attitude that works to predispose a judge for or against a party. *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). However,

> not every bias, partiality, or prejudice merits recusal. To disqualify, prejudice
> must be of a personal character, directed at the litigant, "must stem from an
> extrajudicial source and result in an opinion on the merits on some basis other

---

[3]This court has granted a stay of trial court proceedings in this case pending resolution of the Tenn. R. App. P. 9 appeal.

-9-

than what the judge learned from participation in the case."

*Id*. (citations omitted.); *see also Spain v. Connolly*, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980).

It is well settled that "[a]dverse rulings by a trial court are not usually sufficient grounds to establish bias." *Keisling v. Keisling*, 92 S.W.3d 374, 380 (Tenn. 2002); *Alley*, 882 S.W.2d at 821. The reason for this proposition has been explained:

> [T]he mere fact that a judge has ruled adversely to a party or witness . . . is not grounds for recusal. Given the adversarial nature of litigation, trial judges necessarily assess the credibility of those who testify before them, whether in person or by some other means. Thus, the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse. If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon.

*Davis*, 38 S.W.3d at 565 (citations omitted).

Thus, the mere fact that a judge has ruled adversely to a party or witness is not grounds for recusal. *State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995). If the rule were otherwise, recusal would be required in every case since trial courts necessarily rule against at least one party on all motions and other proceedings.

Accordingly, we find no basis for disqualification in the trial court's rulings. Further, we do not interpret the trial judge's statements regarding the quandry facing plaintiffs' counsel as indicating bias.

### IV. PROPOSAL REGARDING EQUIPMENT

The remaining ground for recusal based upon the appearance of bias or prejudice stems from a discussion between the trial judge and the attorneys for both sides. This meeting took place after the jury had retired in the first case. During the meeting, the trial judge suggested an arrangement or agreement that would result in additional technological capabilities or equipment, *i.e.*, a large screen monitor, for the courtroom to use in the other trials scheduled in these 31 related cases.

According to the trial judge, he had been aware that these trials would involve

-10-

"extensive use of detailed exhibits, photographs, x-rays, and videos." Consequently, he sought funding to enhance the video recording and display technology in the courtroom. Only part of the improvements sought by the trial judge were funded: upgrading the recording equipment and one large monitor, which was mounted on the wall behind the jury box. The enhanced technology was used during the trial of the first case. As the trial judge later explained:

> The display technology in the courtroom was used constantly during the trial and it became very apparent that the images displayed on the LCD monitor were vastly superior to the same image from the projector. The lawyers frequently directed the jury to turn around and look at the images on the monitor since they were much clearer. Mr. Langdon even commented during one session that the monitor was one of the best displays he had ever seen. Tire marks on some photographs were important and on the projector they were barely visible, but on the monitor they were clearly shown. X-rays and photographs of the tires were not as crisp and clear on the projector as on the monitor.

The judge was of the opinion that an additional monitor would be helpful in the trials of the next cases, with the next trial beginning March 18, 2013. He again sought government funding, but none was available. "Faced with this dilemma," the trial judge explained, "I decided to try a novel approach."

The judge met with the lawyers on February 28, the day after the jury in the first trial began deliberations. The judge asked the lawyers if they would each agree to pay $2500 per party that would be used to purchase and install an additional monitor in his courtroom before the trial of the next of these related cases began. In return, the parties would receive all future video records in the 13 cases remaining to be tried. The trial judge described the offer as a voluntary prepayment for all video records, at a reduced cost. One party's lawyer sent in a check for the prepayment; the others chose not to.

The plaintiffs characterize the meeting with the judge a little differently. The lawyers for defendant Bridgestone/Firestone, for defendant Ford Motor Company, and for the plaintiffs in this, the second case, were also the lawyers who had represented the parties in the first case. The plaintiffs' counsel states that when they all met, the trial judge informed the attorneys that his courtroom needed a 90 inch video monitor priced at $7500 prior to the beginning of the trial of the next Tire Litigation case.

The plaintiffs continue, "The trial court informed the attorneys that, if each party contributed $2500 for its technology fund, they would be provided DVDs, which are the

-11-

official record for this court, for life without charge . . . . The court announced that the court would start producing the DVDs itself rather that continue to have the Clerk's office do so . . . ."

The plaintiffs characterize the judge's offer as a solicitation and cite Rules 3.1 and 3.7 of the Rules of Judicial Conduct. Rule 3.1 establishes restrictions on judges while participating in personal or extrajudicial activities. Rule 3.7 provides guidelines for a judge's participation in activities of charitable and non-profit organizations, and specifically provides that a judge may solicit donations to such an organization only from his or her family or some other judges. The plaintiffs quote from Comment 3 to Rule 3.7, stating that to do other than to limit solicitations by judges would "present an element of coercion."[4] They also quote Comment 4 of Rule 3.1:

> While engaged in personal or extrajudicial activities, judges must not coerce others or take action that would reasonably be perceived as coercive. For example, depending upon the circumstances, a judge's solicitation of contributions or memberships for an organization, even as permitted by RJC 3.7(A), might create the risk that the person solicited would feel obligated to respond favorably, or would do so to curry favor with the judge.

While recognizing that the money or equipment discussed by the trial judge herein was not a solicitation for a charitable organization or for a political campaign, the plaintiffs argue that the trial judge's actions herein are essentially the same in their potential effect. The plaintiffs assert: "But in soliciting that funding from the parties (or their attorneys) in a case (or cases) pending before him, the Court presented that very element of coercion which is both expressly and impliedly prohibited by the Code of Judicial Conduct."

We find the discussion and the trial judge's "novel approach" to be problematic and inappropriate. We know of no authority for a state trial court to receive donations or to receive payment for records. As a general rule, any donations to, or money received by, a governmental entity is government revenue subject to the appropriation process. In other words, we know of no authority for a state trial court to receive funds from private parties and use those funds for a specific purpose without legislative action.[5]

Additionally, parties to litigation are not responsible for furnishing equipment, or any

---

[4]The Comment actually states that certain specified activities for charitable organizations "are not solicitations and do not present an element of coercion or abuse the privilege of judicial office."

[5]The trial court told the lawyers to send the funds or make them payable to State Trial Courts, which we believe is a category within the budget for the Metropolitan Government for Nashville and Davidson County.

other item, to the courts. Parties who wish to use technology not present in a particular courtroom may seek permission to bring in their own equipment, but that equipment leaves the courtroom when its use is no longer desired by the owner. Many courts in this state conduct trials with less available technology than that present in the courtroom of this trial judge. It cannot be maintained that the quality of justice suffers in those courts.[6]

We believe the goal of the trial judge herein was to enhance the jury's understanding of the evidence in these cases. There was no potential personal gain for the trial judge. And, we do not find that the discussion among the judge and the attorneys involved coercion by the judge. The suggestion made by the judge was not of the type that would reasonably be construed as coercive. All parties were offered receipt of video records in all the remaining trials.[7] In his ruling on the motion to recuse, the trial judge stated "I expressly and clearly told them that I did not want anyone to perceive this discussion as an attempt to compel them to pay for anything and that any participation would be strictly voluntary."

The trial judge also said that the response to his proposal was very favorable, and when he asked if anyone had questions, the only question involved the practical implementation. The judge stated three times that he inferred from the comments in the meeting and in a brief discussion after the meeting[8] that all the lawyers were in agreement and wanted to proceed with the option. The defendants' description of the meeting is consistent with that of the judge. In fact, the plaintiffs do not dispute what was said in the meeting, but disagree as to its impact on recusal. We cannot conclude that the discussion regarding the monitor was coercive.

The more problematic issue is whether the action by one of the defendants created a situation that would lead a person of ordinary prudence in the judge's position to find a reasonable basis for questioning the judge's impartiality. Shortly after the meeting where the proposal for funding the monitor was discussed, counsel for the plaintiffs asked counsel for defendants to let him know if they intended to make the payment, since it needed to be an "all

---

[6]Consequently, we cannot agree with the defendants' inference that the trial court's recognition that a fair trial would require the jury to examine the evidence closely and in detail leads to any conclusion that the additional monitor, or any other upgrade of technology, was necessary to a fair trial.

[7]The trial judge explained that his proposal was directed at all the remaining cases in the Bridgestone/Firestone Tire Litigation and that it would have allowed each set of plaintiffs to spend less than $200 for the video record of their trials and related proceedings, which the judge considered to be a financial benefit to the plaintiffs. We note, however, that there was no certainty that all the remaining cases would, in fact, proceed to trial.

[8]One of plaintiffs' attorneys asked to whom the money should be sent, and another of plaintiffs' attorneys commiserated with the judge on the difficulties of getting government funding. Additionally, counsel for plaintiffs communicated with counsel for defendants later that day asking that he be informed if either of them intended to make the payment and raised no concern about the propriety of the discussion.

or nothing deal." Nevertheless, counsel for Bridgestone/Firestone sent a check for $2500 to the court administrator for the trial courts of Davidson County "in connection with the above-captioned cases" without alerting plaintiffs' counsel.

In his order denying recusal, the trial judge stated that his proposal would have required that all the parties agree to participate. If one or more declined to participate, the plan would not be implemented. Counsel for the defendants agree with that characterization. The plaintiffs assert that participation by counsel for one party coupled with plaintiffs' refusal to participate created the appearance that the trial judge would be biased against the plaintiffs as a result of their preventing the purchase of the monitor for the courtroom.

The defendants defend the proposal by the trial judge, asserting the valid reason and intentions underlying it, the lack of any personal benefit or gain to the judge, the equal economic benefits, and the inapplicability of the ethical rules related to extrajudicial activities and campaign fundraising. With regard to the assertion that their sending in money without the plaintiffs' agreeing to participate created a situation in which prejudice could be alleged, the defendants merely argue that in light of the circumstances, particularly the judge's emphasis on the voluntariness of the proposal, "no reasonable observer would believe that his subsequent rulings would be 'tainted' by the fact that Firestone had supported the proposal but Plaintiffs had not." They analogize this proposal to a trial judge's proposals regarding the administration of a case and argue that a party's disagreement with such a proposal is not a basis for recusal.

While we do not agree that the potential for the appearance of bias or prejudice can be so easily dismissed on the basis of conclusory assertions, we do agree that the circumstances present in this case do not require that the trial judge recuse himself. First, the plaintiffs were not the only party who chose not to participate in the proposal; the other defendant, Ford Motor Co., also did not agree to prepay for copies of the video records. Second, the judge made it clear that only if all parties agreed to participate would the proposal be implemented. One defendant acted without insuring that all parties were in agreement. It was this action that created the potential for the appearance of bias.

Finally, the goal of the judge's proposal was to obtain additional technology that would help in the trial of the 13 other similar cases involving some of the same plaintiffs. In particular, the monitor would have aided the jury in performing its role. No party has disagreed with the trial judge's explanation of the types of exhibits involved or the assistance that another monitor would provide.

The plaintiffs have not provided any evidence or argument that would indicate that the trial judge's interest in the additional monitor was anything other than as an aid to trying the

upcoming 13 cases.  They have failed to convince us that the trial court had an interest so concrete, personal, or strong that the failure of his proposal would affect his judgment or impartiality.  Under the circumstances of this case, we hold that the trial court's decision to deny the motion to recuse should be affirmed.

The costs of this appeal are taxed to the Appellants.

_____
PATRICIA J. COTTRELL, JUDGE